[Civ. No. 1437.    Third Appellate District.—February 10, 1916.]

## E. J. WHITE, Respondent, v. JENNIE J. MATHEWS, as Auditor, etc., Appellant.

MANDAMUS—WHEN ISSUABLE.—A writ of mandate will not issue if there is a plain, speedy, and adequate remedy at law.

ID. — COUNTIES — LIABILITY FOR CLAIMS — MEASURE OF AUTHORITY OF TRIBUNAL.—The statute only must be looked to, to ascertain the extent of the authority of any tribunal to determine and fix the liability of a county for any claims that may be presented against it.

ID.—EXPERTING OF COUNTY BOOKS—PAYMENT FOR SERVICES—CONSTRUC-
TION OF SECTION 928, PENAL CODE—SUPERIOR COURT WITHOUT JURIS-
DICTION.—The superior court has no power, under section 928 of the
Penal Code, to issue an order directing a county auditor to draw
his warrant in payment of the services of an expert employed by
the grand jury to examine the books of the officers of the county,
as its jurisdiction under such section is limited to the approval of
the employment of the expert, and *mandamus* will not lie to com-
pel the issuance of such a warrant.

ID. — APPROVAL OF CLAIM — DUTY OF BOARD OF SUPERVISORS. — A claim
for services for experting county books must be settled and allowed,
as other claims, by the board of supervisors, as the only power of
the grand jury is to enter into an agreement for the employment
at an agreed compensation *per diem*, and the only power of the
court is to approve such employment.

APPEAL from a judgment of the Superior Court of
Mendocino County. J. Q. White, Judge.

The facts are stated in the opinion of the court.

Hale McCowen, for Appellant.

Charles Kasch, for Respondent.

BURNETT, J.—This was a petition for a writ of mandate
to require the auditor to draw a warrant in favor of plaintiff
for his services in experting the books of the county under
employment by the grand jury. After the preliminary aver-
ments, the complaint sets forth that the grand jury, in pur-
suance of section 928 of the Penal Code, "deemed it necessary
to secure the services of an expert to examine the books,
records, and accounts of all the officers of the county and
especially those pertaining to revenue for a period of six
months ending December 31, 1914, and that the employment
of said expert for said purpose was approved by the superior
court in and for the county of Mendocino, it being provided
that said expert should be employed for a period not to exceed
twenty-five days at a compensation of ten dollars per day."
It further appears that plaintiff performed said services be-
ginning on February 3 and completing the work on March
24, 1915; that he made his report to said grand jury and pre-
sented to said body a statement showing the amount due him,
to wit, the sum of $250; that thereafter this statement was

presented to the judge of the superior court of said county and it was duly approved by him; that thereafter said judge made an order directing defendant as auditor to draw her warrant on the treasurer of said county in favor of plaintiff for said sum, but that she refused, and still refuses, to do so. A general demurrer was interposed by the district attorney of the county representing the auditor, but this was overruled, and judgment directed to be entered requiring said auditor to draw said warrant, and from this judgment the appeal is taken.

There is no difference between counsel as to the principle of law involved, the controversy being rather as to the construction of said section 928 of the Penal Code.

It is not disputed that the writ of mandate should not issue if there is a plain, speedy, and adequate remedy at law, and that we must look only to the statute to ascertain the extent of the authority of any tribunal to determine and fix the liability of the county for any claims that may be presented. The duty of the auditor is prescribed in section 4091 of the Political Code as follows: "The auditor must issue warrants as provided in section four thousand and seventy-six, on the treasurer, in favor of all persons entitled thereto, in payment of all claims and demands chargeable against the county which have been legally examined, allowed and ordered paid by the board of supervisors. The auditor must also issue warrants on the treasurer for all debts and demands against the county, when the amounts are fixed by law, *or are authorized by law to be allowed by some person or tribunal other than the board of supervisors.*"

There can be no pretense that the present case falls within the foregoing enumeration unless it be included in the class of claims which we have italicized. This is, indeed, conceded, and respondent declares that "the only question in the appeal of this case is whether or not the judge of the superior court has a right to issue an order directing the auditor to draw a warrant in payment of the services of an expert employed by the grand jury. If the judge has such authority, so far as the auditor is concerned the claim is no different from a judgment. If the judge has such authority, the claim has regularly been presented, audited, and allowed just as a claim for witness fees, reporter's fees, and for furnishing the courtroom are allowed. If it has been duly presented, allowed,

and ordered paid, the action of the judge, in the absence of fraud, is conclusive, and the auditor cannot lawfully refuse to draw his warrant therefor.'' He further insists that such authority for the judge to audit the claim and make the order for its payment is found in said section 928 of the Penal Code.

Before analyzing said section we may examine the decisions cited by respondent in support of his contention.

The first of these is *Ex parte Reis*, 64 Cal. 233, [30 Pac. 806]. Therein it was held that the superior courts in the city and county of San Francisco had the power to fix and order paid the compensation of phonographic reporters in criminal cases, and it was the duty of the treasurer of said city and county to pay the same upon the order of the court. It is apparent that such authority was clearly conferred upon said courts, for the law provided that ''the compensation of the reporter must be *fixed by the court* and paid out of the treasury of the county in which the case is tried, *upon the order of the court.*'' There was no room for difference of opinion as to the construction of the law, the only ground for debate being as to whether the statute was in force and as to the constitutional authority of the legislature to confer such power upon the court.

In *Boys and Girls Aid Soc.* v. *Reis*, 71 Cal. 627, [12 Pac. 796], it was held that an order of the police court of the city and county of San Francisco for the payment out of the city and county treasury of the expenses for the maintenance of a minor convicted of a misdemeanor and committed to the custody of the officers of a nonsectarian charitable corporation is not an exercise of the right of taxation without representation, and that it was the duty of the treasurer to comply with such order, notwithstanding the demand had not been first approved by the board of supervisors. But the law therein explicitly provided that ''such court may further, in its discretion, *direct the payment* of the expenses of the maintenance of such minor during such period of two months, not to exceed in the aggregate the sum of twenty-five dollars,'' etc., and the court said: ''To the judge of the proper court the statute commits the discretion of making the orders for such payments; where such a discretion is by law conferred upon a specific officer, such officer must exercise that discretion personally. . . . And when properly exercised the board of

supervisors is not required to supervise the action of the court.''

*McAllister* v. *Hamlin,* 83 Cal. 361, [23 Pac. 357], involved the application of subdivision 6 of section 869 of the Penal Code, providing that: ''The reporter's compensation shall be fixed by the magistrate before whom the examination is had, and shall not exceed that now allowed reporters in the superior courts of this state, and shall be paid out of the treasury of the county, or the city and county, in which the examination is had, on the certificate and order of the said magistrate.'' Like the cases hereinbefore considered, the intention of the legislature was plain. The statute clearly authorized the magistrate to fix the compensation and audit the claim of the reporter, and it was properly said: ''The legislature did not intend, when it passed the section of the Penal Code, that notwithstanding it authorized the *fixing* by the exercise of judicial discretion by the magistrate of the reporter's compensation, nevertheless it was left with the board of supervisors, in their discretion as a superior supervising body, to *unfix* what had been confided by the legislature to the judicial tribunal. . . . The demands and accounts to be allowed by the board of supervisors are not those which the legislature has expressly authorized the judicial branch of the government to certify to and order paid out of the treasury of the county, or that of the city and county. No such supervisory power over the courts of the state was ever intended to be lodged with the board of supervisors by the County Government Act.''

In *Ex parte Widber,* 91 Cal. 367, [27 Pac. 733], the supreme court had under review section 144 of the Code of Civil Procedure, providing that if the board of supervisors neglect to provide the same, the superior court or judge thereof might direct the sheriff to secure suitable rooms, etc., for the court, and that ''the expenses incurred, certified by the judge or judges to be correct, shall be a charge against the city and county treasury, and paid out of the general fund thereof.'' It was correctly said by the supreme court: ''It is not necessary that these demands should be audited by the board of supervisors; for the legislature in the section of the code itself provided that the judge should be the auditing officer.'' The court also held that ''the power of the court is limited and measured by the terms of the section,'' and that it had no

authority to direct the imprisonment for contempt of the treasurer who refused to obey the order of the court directing him to pay the money out of the treasury, since there was nothing in the provisions of the code giving the court any such power, "and it certainly had not the inherent power to make the order, for such power was not a necessary incident to the court in order that its previous acts might fully and truly accomplish the results intended and desired. . . . Under the provisions of the code the court does not even audit the demand; that act is performed by the judge, and when performed, the power given under this section is exhausted."

This case, however, is strikingly different from those hereinbefore cited. We look in vain in said section 928 for any provision authorizing the court or the judge to audit the demand, to certify to its correctness, to make an order for its payment, or in fact to make any order whatever in the premises after the services are performed. We may quote the portion of said section relating to the subject as follows: "It shall be the duty of the grand jury annually to make a careful and complete examination of the books, records, and accounts of all the officers of the county, and especially those pertaining to the revenue, and report as to the facts they have found, with such recommendations as they may deem proper and fit; and if, in their judgment, the services of an expert are necessary, they shall have power to employ one, at an agreed compensation, not to exceed ten dollars a day, to be first approved by the court. .... Such compensation of expert and assistants to be payable as other county charges."

It is thus to be seen that the only thing in the matter concerning which the court acts is the *employment* of the expert. The court must approve the employment, and this before the grand jury employs him. Said body has no power to employ him without said approval. There is not a syllable as to any further action by the court. Of course, any order of approval of the employment made by the court before the services are performed cannot amount to an audit or certification of the claim. The claim against the county does not mature until the work is done, and then it is to be paid "as other county charges." That can mean nothing else than that it stands upon the same footing as ordinary claims against the county. The approval of the court gives validity to the contract, but

the power to fix the amount due after the services are performed does not follow from the exercise of the authority to permit a legal charge to be incurred against the county. As stated by appellant, "the sheriff and district attorney each has the right to incur expenses legally chargeable against the county for the detection of crime, yet no one would argue that either of those officials has the power to direct the auditor to draw a warrant for those expenses." The matter of the expenses of the district attorney was, indeed, considered by the supreme court in *County of Yolo* v. *Joyce,* 156 Cal. 429, [105 Pac. 125]. Therein is quoted section 228 of the County Government Act of 1898 (Stats. 1897, p. 575), as follows: "The following are county charges: . . . The traveling and other personal expenses of the district attorney, incurred in criminal cases arising in the county and in civil actions and proceedings in which the county is interested, and all other expenses necessarily incurred by him in the detection of crime and prosecution of criminal cases and in civil actions and proceedings and all other matters in which the county is interested," and it was held that this must be considered in connection with subdivision 1 of section 25 of the County Government Act, providing that county charges "are to be paid out of the county funds under a claim presented to and allowed by the board of supervisors."

It is, no doubt, the declared policy of the law to confide to the board of supervisors the general supervision and control of the financial affairs of the county. It is made their duty "to examine, settle, and allow all accounts legally chargeable against the county, except salaries of officers, and such demands as are authorized by law to be allowed by some other person or tribunal, and order warrants to be drawn on the county treasurer therefor." (Pol. Code, sec. 4041, subd. 12.)

Here, as we have seen, there is no other tribunal authorized to allow the claim. When the employment is approved by the court and the services are performed, they become a legal charge against the county, but, there being no special mode provided for the payment of said claim, it is "to be submitted to the board of supervisors as other claims against the county are submitted." (*Murphy* v. *Madden,* 130 Cal. 674, [63 Pac. 80].)

The propriety of submitting said claim to some tribunal to be audited and allowed must be apparent. As we have seen,

the only authority committed to the court is to approve the employment, and it may be said that the only power of the grand jury is to enter into an agreement for the employment at an agreed compensation *per diem*. In other words, the court and grand jury can authorize the employment of an expert and fix his daily compensation, but their power extends no further. If it had been the intention of the legislature to clothe the court or the grand jury with the authority to audit the demand and direct its payment after the services had been performed, it must be presumed apt language for that purpose would have been used.

In conclusion, we may say that there should be no difficulty in securing favorable action by the board of supervisors if the work was actually performed. There seems to be time yet for petitioner to present his claim as suggested, and we feel satisfied that such is the course to pursue.

The judgment is reversed.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 6, 1916.