[Civ. No. 1747.    Third Appellate District.—December 12, 1917.]

## S. A. WOODY, Petitioner, v. HOWARD A. PEAIRS, Judge, etc., Respondent.

GRAND JURY—EMPLOYMENT OF ASSISTANTS—LACK OF AUTHORITY.—A grand jury or the superior court has no authority to designate, appoint, or require any person other than the public officers charged by law with the performance of such duties to search for testimony and subpoena witnesses to be used by and before the grand jury as to matters legally under investigation by that body, there being no express authority, and it not coming within the inherent powers of the superior court.

COUNTIES—PRESENTATION AND FILING OF CLAIMS.—Unless there is some provision of law expressly authorizing a different course of procedure, all claims or charges against a county must be presented and filed and approved and allowed as provided in sections 4075, 4076, 4091, 4173, and 4307 of the Political Code, in which cases only is the auditor required to interpose his official approval as a prerequisite to the payment thereof by the treasurer.

ID.—AUDITING OF CLAIM—MANDAMUS.—The superior court has no inherent power to make an order requiring a county auditor to audit a claim against the county for services of detectives employed by the grand jury to assist that body in the investigation of crime, the auditor not being an officer of the court or a party to the proceeding in which the order was made, the claimant's remedy being by writ of mandate.

APPLICATION for a Writ of Prohibition originally made to the Supreme Court to prevent a Superior Court from enforcing a judgment for contempt, and transferred to the District Court of Appeal for the Third Appellate District for hearing and decision.

The facts are stated in the opinion of the court.

E. F. Brittan, for Petitioner.

E. L. Foster, and Chas. A. Barnhart, for Respondent.

HART, J.—Petitioner applied to the supreme court for a writ of prohibition to prevent respondent from punishing petitioner for contempt of court, and the proceeding was duly transferred to this court for hearing and decision.

From the petition and from the return of respondent, the following facts appear: The petitioner, at all times mentioned, was the duly elected, qualified, and acting auditor of Kern County. On the third day of June, 1915, one J. J. Deuel petitioned the superior court of Kern County for an order allowing his two certain claims for services, one in the sum of $240 and the other in the sum of $925, "under and by virtue of section 4307 of the Political Code"; and said court was asked to make an order requiring the auditor to draw his warrants for said sums and a further order requiring the treasurer to pay the same. After a hearing in the matter of said petitions the court found the following facts: That, from January 2, 1915, to and including April 9, 1915, said J. J. Deuel "was employed by the grand jury of the county of Kern in securing evidence and witnesses in the various investigations being conducted by and before said grand jury"; that during said times said grand jury "was actually engaged in investigations into the conditions of affairs in the county of Kern, as provided by law"; that said grand jury "was engaged in an effort to close up all houses of prostitution and prevent their operation, and to prevent felonies, and was further engaged in an effort to stop the illicit sale of intoxicating liquors; and that during all of the time there was a large number of matters of this kind and character being investigated by the said grand jury, and that . . . it became and was necessary for the said grand jury to employ special detectives, for the reason that the sheriff of the county of Kern was unable to furnish sufficient officers who could assist

the grand jury in their investigations, and that the help and assistance provided by the district attorney of the county of Kern was inadequate, and that by reason of the facts above stated, the grand jury was unable to procure the attendance of witnesses, material and necessary to investigations then and there being made by the said grand jury, and that by reason of the inadequacy, incompetency, and lack of moral support from the sheriff and inadequate help from the district attorney and the board of supervisors, it became and was necessary to appoint special officers as aforesaid, to assist and aid the grand jury in the proper administration of its duties, under the instructions given by the presiding judge, when the said grand jury was impaneled; that the said grand jury duly and regularly employed J. J. Deuel as a special detective, and authorized him to secure witnesses and evidence in matters being investigated by and before said grand jury''; that said Deuel performed necessary and proper services for the county of Kern, ''all of which services were in relation to criminal proceedings, for which no specific compensation is provided by law, and that a just and reasonable compensation for the services was, and is, the sum of ten dollars per day; that the nature and kind of services performed by the said Deuel was as follows: Subpoenaing and interviewing witnesses; securing information as to the character of various alleged houses of prostitution, and investigating the character and habits of the inmates thereof; investigating into the sale and disposition of liquors in cases of alleged violation of the law; and investigation of matters of criminal investigation, then being conducted by the said grand jury, and in relation thereto, subpoenaing of witnesses, and interviewing the same, and investigating the commission of felonies; that by reason of the said services, the county of Kern is indebted to J. J. Deuel in the sum of $925, which said sum is due, owing and unpaid''; that said claim has been approved by the foreman and secretary of said grand jury and said sum is a reasonable compensation for the services rendered. The order of the court was that the auditor draw his warrant for said sum of $925 in favor of said Deuel and that the treasurer pay said warrant upon presentation.

Contemporaneously with the filing of said petitions by said Deuel, one John Lang filed petitions alleging the same facts, the amount claimed by him being $523.65, which included an

item of $19.65 for traveling expenses, and similar findings and orders were made and entered as in the matter of the Deuel petition. Each of said orders was dated on the twenty-sixth day of June, 1915.

On the second day of July, 1915, a citation was issued to petitioner, Woody, requiring him to show cause, on the eighth day of July, why he had not complied with said orders above referred to. Upon said last-mentioned date, after hearing, the court adjudged said Woody guilty of a willful contempt of court in disobeying said orders and ordered that he be committed to the county jail of the county of Kern, "to be there imprisoned until he shall have obeyed said judgment, order, and decree of this court by drawing and issuing" warrants as directed.

Petitioner contends that the said superior court, respondent, was without jurisdiction to make said orders, the respective claims not being county charges, and that there is no provision of law authorizing the foreman and secretary of the grand jury or the superior court to appoint anyone to do special work for the grand jury as a detective.

We think the court exceeded its jurisdiction in adjudging petitioner guilty of contempt and that the adjudication must, therefore, be set aside as null and void.

In the first place, it is to be remarked that counsel for the respondent have not pointed to any law authorizing a grand jury or the superior court to designate or appoint or require any person other than the public officers charged by law with the performance of such duties to search for testimony and subpoena witnesses to be used by and before the grand jury as to matters legally under investigation by that body; and, unless there is some express authority for such a course either in the grand jury or the superior court, it is very doubtful whether such power may legally be exercised by either, for we do not believe that such authority comes within the inherent powers of the superior court.

The grand jury is clothed by law with certain specifically enumerated powers. (See secs. 915 and 928 of the Penal Code and sec. 4151 of the Political Code.) In none of said sections is there any provision that the grand jury may employ any person other than the public officers whose duty it is to perform that service to gather testimony or subpoena witnesses. On the contrary, section 1328 of the Penal Code

expressly provides that a peace officer (a sheriff or a constable, or, in certain cases, the coroner, or the deputy or deputies of either) must serve in his county any subpoena delivered to him for service, either on the part of the people or of the defendant, and must make a return of the service thereof, subscribed by him, stating the time and place of service.

There are, it is true, certain occasions on which a person not a public official and denominated an elisor may, by an order of the superior court, be designated and appointed to serve and execute legal processes or orders. This may occur where both the sheriff and the coroner are disqualified for any reason from performing that duty. (See Pol. Code, sec. 4173.) And it doubtless is correct to say that in the cases mentioned by said section an elisor, duly appointed as so provided, would be competent to serve in the county in which he resides subpoenas issued by the district attorney (Pen. Code, sec. 1326, subd. 1) for such witnesses as the grand jury, for the purposes of an investigation pending before them, may desire. But, in any case where the appointment of an elisor becomes necessary there must be a showing made of the disqualification of the sheriff and the coroner to serve and execute processes and orders. There was no such showing made in this case.

In the second place, if we assume that the grand jury, under the authority of the superior court, may legally employ persons to assist it in the investigation of crime or other matters coming within the legal competence of that body, and thereby bind the county to the payment of the expenses following from such employment, or, if it be assumed that the expenses incurred in the employment of persons other than the public official charged with such duties to subpoena witnesses for the grand jury or gather testimony to be presented to that body may be considered as coming within the expenses contemplated by subdivisions 2 and 3 of section 4307 of the Political Code, then it is very clear that the same cannot be allowed or paid until they shall have been presented and filed in the form and manner prescribed by section 4076 of the Political Code and thereupon considered, approved, and allowed as provided by section 4075 of said code. Nor has the auditor authority to audit such claims until they are so presented and filed and approved and allowed. (Pol. Code,

sec. 4091.) There are, it is true, some cases where claims against a county may be made upon an order of the judge of the superior court, or in a certain instance we have in mind (Pen. Code, sec. 869; *McAllister* v. *Hamlin,* 83 Cal. 361, [23 Pac. 357]) by a magistrate. These cases, however, are exceptions to the general rule laid down upon the subject by the legislature. In such cases, the law expressly confers upon the judge or magistrate the power to order the claims to be paid; and the judge or magistrate is then himself the auditor of the claim, the treasurer being required to pay the same upon the order of the judge and in the absence of the approval or auditing of the claim by the county auditor. But, unless there is some provision of law expressly authorizing a different course of procedure, all claims or charges against a county must be presented and filed and approved and allowed as provided by the sections of the Political Code above named, in which cases only is the auditor required to interpose his official approval as a prerequisite to the payment thereof by the treasurer. As was said by this court in *White* v. *Mathews,* 29 Cal. App. 634, [156 Pac. 372]: "We must look only to the statute to ascertain the extent of the authority of any tribunal to determine and fix the liability of the county for any claims that may be presented." (See, also, *Ex parte Widber,* 91 Cal. 367, [27 Pac. 733]; *Ex parte Truman,* 124 Cal. 387, [57 Pac. 223]; *Murphy* v. *Madden,* 130 Cal. 674, [63 Pac. 80]; *County of Yolo* v. *Joyce,* 156 Cal. 429, [105 Pac. 125].) We have been cited to no law authorizing the judge of the superior court to fix the amount of, allow and audit such a claim as the one involved herein, assuming that it constitutes the foundation for a valid charge against a county.

But there is still another view to be taken of the question submitted here for decision, viz.: Conceding that the services rendered by the claimant to the grand jury constitute a legal charge against the county, and that it was legally required that the auditor rather than the judge of the superior court should audit the claim to authorize its payment by the treasurer, the remedy of the claimant as against the refusal of the auditor to audit the claim or demand would be by mandate; for in such case the duty of the auditor to audit the claim would be one expressly enjoined upon him by law. (Code Civ. Proc., secs. 1085, 1086.) And in such case, the

auditor would be made and become a party to the action and accorded an opportunity to defend his position. If, then, the claim was determined to be a valid charge against the county and it had been regularly and duly allowed, and the auditor still refused to give it his official approval as prescribed by the law, he then might and probably would be subject to an adjudication of contempt of the court's mandate. In the present case, however, the auditor, who is not an officer of the court, was not a party to the proceeding in which the order allowing the claim was made, and the court certainly had no inherent power to make an order placing him in the perilous position of either auditing the demand or suffering imprisonment for contempt. (*Ex parte Widber,* 91 Cal. 367, 370, [27 Pac. 733]; *Ex parte Truman,* 124 Cal. 387, [57 Pac. 223].)

We conclude: 1. That if the claim in question constituted a legal charge against the county, it is not one of those the amount of which may be fixed and then allowed by the judge of the superior court, but is of that character of claims which must be presented and filed, and approved and allowed and audited as provided by sections 4075, 4076, and 4091 of the Political Code; 2. That, even if it be a claim which may be fixed and ordered paid by the judge of the superior court, the county auditor is not required to audit it to authorize its payment by the treasurer; 3. That, if it is a claim which cannot be paid without the official approval of the auditor, then mandate or some other appropriate proceeding, after the claim has been regularly passed upon and allowed, is the remedy to be resorted to against the auditor in case he refuses to audit the demand or claim.

It follows from the foregoing that the order adjudging petitioner guilty of contempt of court is absolutely void, and that the same must be annulled, set aside, and vacated. It is so ordered.

Chipman, P. J., and Burnett, J., concurred.