[Civ. No. 4639.   Fourth Dist.   Apr. 2, 1953.]

MAURICE UHLER, Petitioner, v. SUPERIOR COURT OF FRESNO COUNTY and STROTHER P. WALTON, Judge thereof, Respondents.

148

Robert M. Walsh, County Counsel, and John E. Loomis for Petitioner.

E. Clarke Savory, District Attorney, and Richard L. Shepard, Assistant District Attorney, for Respondents.

MUSSELL, J.—In these proceedings petitioner, county auditor of Fresno County, seeks to set aside a judgment rendered against him in contempt proceedings in the Superior Court of Fresno County.

On January 26, 1953, a judge of the superior court, by written order, directed the petitioner, upon presentation thereof, to draw his warrant on the county treasurer in the sum of $5,284.32 for distribution among certain accountants for services performed by them in accordance with the pro-

visions of a contract with the Fresno County grand jury. Included in the amount ordered paid was a charge for $749.91 claimed by the accountants as compensation for the services of experts in making a special survey of mechanization of the assessment roll in the assessor's office of said county. On January 27, 1953, one of the accountants presented this order, together with a statement to petitioner for payment. According to an affidavit filed by one of the accountants, petitioner told the accountant he would not be able to pay the entire bill; that he would be able to pay only that which was strictly labeled as work on audit of the county of Fresno and suggested that they see the county counsel about it. They then proceeded to the office of the county counsel who told petitioner not to pay that portion of the bill which was labeled as a special investigation in the assessor's office and was billed separately. Petitioner returned to his office, prepared a warrant for the amount of the order, less the item of $749.91 and delivered the warrant to the accountant.

On January 30, 1953, the same judge of the superior court issued an order to show cause, reciting that petitioner had committed a contempt of court in refusing to draw his warrant in compliance with the order of January 26th. Petitioner was ordered to appear in court on February 4, 1953, to show cause why he should not be punished for contempt. Petitioner filed a return to this order, stating therein that he had not finally refused the payment of the excepted portion of the statement pending the advice of counsel as to whether or not the same should or should not be paid; that the legality of the claim appeared questionable by reason of the fact that section 928 of the Penal Code did not appear to authorize the employment of experts for the purposes stated in the claim; that the contract between the 1952 grand jury and the said accountants did not provide for such services and did not so provide at the time such services were rendered; that the order had not been amended or modified by the court to include such services, and that he was uncertain as to its legal effect. Petitioner then alleged that he acted without intent to violate any lawful order of the court; that he was endeavoring to fully and faithfully perform his duties as county auditor and was acting upon the advice of the county counsel, who, by law, is made his legal advisor; that said counsel had advised him to withhold payment until he could determine whether it was or was not legal.

A hearing was had on the order to show cause on February 4th, at which time the order to draw the warrant was introduced in evidence, together with the accountant's statement attached thereto, and the contract made with the grand jury.

Petitioner testified that he received this order and statements; that on January 27, 1953, he wrote a letter to the county counsel asking for a written opinion regarding the legality of the claim for $749.91; that on January 28th he received a reply from said counsel stating in part as follows: "We are of the present opinion that there is sufficient doubt as to the legality of paying this portion of the claim to justify your withholding payment pending our further research, consideration, and final opinion thereon, which we will give you as expeditiously as possible;" that he had since consulted with the county counsel and was advised by him that an opinion of the attorney general had been asked for but had not been received and that further legal research was being conducted in the matter; that he had no intention, desire or wish to violate an order of the court and that every step he had taken was in an effort to ascertain what his legal duties, rights and responsibilities were.

The court asked petitioner what he would do if informed by the court, after hearing the evidence, that it was his duty to draw the warrant. Petitioner replied that he would draw the warrant. Whereupon, the court said "Well, it is your duty and you are so ordered." Court was then recessed and plaintiff immediately prepared and delivered the warrant for the amount involved. The court then continued the matter to February 6th, at which time he read the following portion of his judgment:

"It Is, Therefore, Ordered, Adjudged and Decreed that all of the allegations in the affidavit for contempt on file herein are true and the court so finds; that the respondent wilfully and contemptuously refused to obey the lawful order set forth in the affidavit on file herein, ordering him to draw his warrant on the Treasurer of Fresno County in the sum of $5,284.32 in payment of expenses incurred by the 1952 Fresno County Grand Jury and presented to him on January 27, 1953.

"As punishment for said contempt, It Is Ordered that respondent, Maurice Uhler, pay a fine of $50.00 on or before 12:00 o'clock noon Monday, February 9th, 1953, and that if the fine be not so paid, he be committed to the Fresno

County Jail to serve one (1) day for each two dollars of the fine remaining unpaid.''

The question here involved is whether the trial court's findings and judgment are supported by substantial evidence. We conclude that this question must be answered in the negative.

■ A proceeding to punish a defendant for contempt is in its nature a criminal proceeding. ■ The charge, the findings thereon, and the judgment of the court are to be strictly construed in favor of the accused and no intendments or presumptions can be indulged against him. There is also a strong presumption that a person is innocent of crime or wrong. (Code Civ. Proc., § 1963, subd. 1; *Bennett* v. *Superior Court,* 73 Cal.App.2d 203, 224 [166 P.2d 318].) ■ In a prosecution for constructive contempt the affidavits on which the citation is issued constitute the complaint. ■ The affidavits of the defendant constitute the answer or plea, and the issues of fact are thus presented. A hearing must be had on these issues at which competent evidence must be produced. ■ The proceeding is of such a distinctly criminal nature that a mere preponderance of evidence is insufficient. (*Hotaling* v. *Superior Court,* 191 Cal. 501, 505 [217 P. 73, 29 A.L.R. 127].)

In passing upon the question of the trial court's jurisdiction, we may consider the evidence before the trial court for the purpose of determining whether it was sufficient to give that court jurisdiction to render its judgment finding the accused guilty of contempt. ■ The review of the evidence is limited to determining whether there was any substantial evidence before the trial court to sustain its jurisdiction. (*Bridges* v. *Superior Court,* 14 Cal.2d 464, 485 [94 P.2d 983]; *City of Vernon* v. *Superior Court,* 38 Cal.2d 509, 517 [241 P.2d 243].)

County auditors are required to issue warrants on the treasurer in favor of the persons entitled thereto in payment of all claims chargeable against the county which have been legally examined, allowed, and ordered paid by the board of supervisors. (Gov. Code, § 29803.) County auditors are also required by law to issue warrants on the treasurer for all debts and demands against the county when the amounts are fixed by law or are authorized by law to be allowed by a person or a tribunal other than the board. (Gov. Code, § 29804.) Section 23006 of this code provides that any contract, authorization, allowance, payment, or liability to pay

is made or attempted to be made in violation of law, is void, and shall not be made the foundation or basis of a claim against the treasury of any county. Section 24054 of said code provides that:

"Any officer authorizing, aiding to authorize, auditing, allowing, or paying any claim or demand upon or against the treasury of any county, or any fund thereof, in violation of law or the constitution is liable personally and upon his official bond to the person damaged by such illegal action, to the extent of his loss by reason of nonpayment of his claim."

In *Walton* v. *McPhetridge*, 120 Cal. 440, 444 [52 P. 731], it is said that an auditor ought not to draw his warrant for an illegal demand, even though allowed by the board, and if he does so knowingly and wilfully he is personally responsible, and may be made to refund the money thus illegally paid. And in *Linden* v. *Case*, 46 Cal. 171, 174, it is said that "If illegal claims are allowed by the Board against the county, it will be the duty of the auditor to refuse to draw warrants therefor." In *County of Calaveras* v. *Poe*, 167 Cal. 519, 521-522 [140 P. 23], the court said: "The office of auditor is created by statute. The duty of the defendant as auditor was to refuse to sanction any illegal claim against the county . . . and he might only issue warrants for debts or demands against the county which were authorized by law to be allowed to some person."

The contract with the accountants employed by the grand jury was executed pursuant to section 928 of the Penal Code, which provides in part as follows:

"It shall be the duty of the grand jury annually to make a careful and complete examination of the books, records and accounts of all the officers of the county . . . and if, in their judgment, the services of an expert are necessary, they shall have power to employ one, at an agreed compensation, to be first approved by the court. . . .

". . . It shall also be the duty of every grand jury to investigate and report upon the needs of all county officers in its county, including the abolition or creation of offices and the equipment for, or the method or system of performing the duties of, the several offices. . . ."

"Any and all expenses incurred under this section, and also the per diem and mileage where allowed by law, of the grand jurors, shall be paid by the treasurer of the county out of the general fund of said county upon warrants drawn by the

county auditor upon the written order of the judge of the superior court in said county.''

Expenses incurred under the section are required to be paid upon warrants drawn by the county auditor upon written order of the judge of the superior court.

No one may be punished in contempt for the disobedience of a void order (*Kreling* v. *Superior Court,* 18 Cal.2d 884, 885 [118 P.2d 470]) and while we are not here deciding the validity of the order involved, the petitioner, under the circumstances, should have been allowed a reasonable time within which to examine the claim and draw his warrant therefor. The evidence shows that he took immediate steps upon presentation of the order to ascertain the legality of the claim. Three days later he was served with an order of court reciting that he had committed a contempt thereof in refusing to draw his warrant. At the hearing of the order to show cause held on February 4, 1953, the court, after hearing the evidence, for the first time advised plaintiff that it was his duty to draw the warrant. Whereupon plaintiff drew the warrant in accordance with the court's order then made.

We are of the opinion, under the circumstances shown that the proper method to test the validity of the claim and order was by mandate and not by contempt proceedings. As was said in *Woody* v. *Peairs,* 35 Cal.App. 553, 558-559 [170 P. 660]:

''Conceding that the services rendered by the claimant to the grand jury constitute a legal charge against the county, and that it was legally required that the auditor rather than the judge of the superior court should audit the claim to authorize its payment by the treasurer, the remedy of the claimant as against the refusal of the auditor to audit the claim or demand would be by mandate; for in such case the duty of the auditor to audit the claim would be one expressly enjoined upon him by law. (Code Civ. Proc., secs. 1085, 1086.) And in such case, the auditor would be made and become a party to the action and accorded an opportunity to defend his position. If, then, the claim was determined to be a valid charge against the county and it had been regularly and duly allowed, and the auditor still refused to give it his official approval as prescribed by law, he then might and probably would be subject to an adjudication of contempt of the court's mandate. In the present case, however, the auditor, who is not an officer of the court, was not a party to the proceeding

in which the order allowing the claim was made, and the court certainly had no inherent power to make an order placing him in the perilous position of either auditing the demand or suffering imprisonment for contempt. (*Ex parte Widber*, 91 Cal. 367, 370 [27 P. 733]; *Ex parte Truman*, 124 Cal. 387 [57 P. 223].)''

The evidence before us is that petitioner, in the performance of his official duties, endeavored in good faith and with reasonable promptness to obtain a determination of the legality of the claim presented to him; that no determination thereof was made until the hearing on the order to show cause, at which time petitioner promptly drew his warrant as ordered by the court. There was no substantial evidence that petitioner wilfully and contemptuously refused to obey the order of the court. In contempt proceedings an intent to commit a forbidden act is as essential to guilt as in the case. of a criminal offense. (*City of Vernon* v. *Superior Court, supra,* p. 516.) The mere showing of a failure to draw the warrant immediately upon presentation is not sufficient to show such an intent. Petitioner herein may well have concluded, in good faith, that it was his duty as a public officer, charged with the administration of a trust, to temporarily delay drawing the warrant pending an investigation with respect to the validity of the claim. When this issue was passed upon by the court at the hearing on the order to show cause the warrant was immediately drawn. It was not then necessary to punish petitioner to secure performance of the order presented to him on January 27, 1953. Under such circumstances petitioner should not have been punished for contempt. (*City of Vernon* v. *Superior Court,* 39 Cal.2d 839, 843 [250 P.2d 241].)

Following the submission of this matter on review, counsel for respondent filed a letter herein asking that certain facts be made a part of the record. It is stated in the letter that on December 30, 1952, the county counsel informed the foreman of the Fresno County grand jury that the claim involved was illegal; that on January 20th petitioner and his counsel called upon respondent and counsel advised the judge that he considered the claim illegal and suggested that the court look up some authorities on the matter; that the judge then stated that no order had been presented to him at that time for the payment of the claim; that he would make such orders as he considered proper. These facts, some of which were stated to be inaccurate and incomplete in a letter filed by the county

counsel, if made a part of the record and considered with it, would not be sufficient to support the judgment.

The order and judgment of contempt are vacated and reversed.

Barnard, P. J., and Griffin, J. concurred.

A petition for a rehearing was denied May 1, 1953, and the following opinion was then rendered:

THE COURT.—The respondents have asked for a rehearing, contending that two important questions of law were left undecided: (1) Whether or not the court's order of January 26th was a "valid order," and (2) whether the auditor has any right or duty to consider or pass upon the legality of such a grand jury expense. It is argued that the petitioner had no such right; that all discretion with respect to a claim arising under section 928 of the Penal Code, as amended, is vested in the court; and that the evidence shows an intentional violation of the court order and amply sustains the finding of contempt.

The controlling question presented to this court was not as to whether the order of January 26th was a valid order, and not as to whether it should eventually be decided that the auditor's duty, in such a case, is merely ministerial. It was unnecessary to decide either of those questions. Because one sentence, considered apart from the rest of the opinion, might be construed as having the effect of deciding the second of these questions, the opinion is modified by striking therefrom the sentence in the fifth from the last paragraph (containing the quotation from Pen. Code, § 928) beginning with the words "In view of . . ." and ending with the words ". . . was illegal."

The question before us was as to whether the evidence in the record was sufficient to support and justify the finding that the petitioner wilfully and contemptuously refused to obey the court's order. The record clearly discloses that close legal questions with respect to the duties of the auditor were involved which had not been decided, so far as anyone knew or still knows; that there was an apparent inconsistency, if not a possible conflict, between various statutes relating to these duties; that the auditor was advised by the county counsel to await his search of the law, and told that the Attorney General had been asked for an opinion; that on the third

day the auditor was cited for contempt; that at the hearing, the first opportunity for both sides to be heard, the auditor expressed his willingness to do whatever the court should order; and that he immediately complied when the court told him that it was his duty to draw the warrant.

It was and is our view that under these circumstances the petitioner should have been allowed a reasonable time in which to act; that the close legal questions involved should have been presented and handled in some manner more appropriate to a just decision than that afforded by a resort to a quasi-criminal proceeding; and that there was no substantial evidence justifying a finding of contempt.

While a court has inherent power to punish for contempt, this is a drastic remedy which should be used only when necessary in order to maintain law and order. It should rarely, if ever, be used for the purpose of settling differences of opinion between conscientious officials with respect to close questions of civil law. Whether or not the power to do so technically existed here, in our opinion it was an abuse of discretion to punish the petitioner for contempt under these circumstances.

Respondents' petition for a hearing by the Supreme Court was denied May 28, 1953. Carter, J., was of the opinion that the petition should be granted.