[Civ. No. 29204. Second Dist., Div. Four. Apr. 19, 1965.]

SHIRLEY GLEN HICKMAN, JR., Petitioner, v. SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; LORRAINE ELEANORE HICKMAN et al., Real Parties in Interest.

665

Leon J. Garrie and Russell W. Bledsoe for Petitioner.

Harold W. Kennedy, County Counsel, and Jean Louise Tarr, Deputy County Counsel, for Respondent.

Samuel Reisman for Real Parties in Interest.

FRAMPTON, J. pro tem.*—Petitioner herein seeks review of proceedings in the court below and annulment of the judgments of contempt.

Petitioner is the plaintiff in an action for divorce filed August 4, 1964, entitled, *Shirley Glen Hickman, Jr.* v. *Lorraine Eleanore Hickman,* Number D654267, in the Superior Court of Los Angeles County.

On September 22, 1964, after a hearing upon the defendant wife's order to show cause why petitioner should not pay her attorneys' fees, costs, alimony pendente lite and child support, the court below made the following order:

"Temporary custody of the 2 minor children is awarded to the defendant with right of reasonable visitation reserved to the plaintiff. Plaintiff is ordered to pay to defendant for

*Assigned by the Chairman of the Judicial Council.

support of the minor children the sum of $150 per month per child, and to defendant for her support the sum of $300 per month, a total of $600 per month, payable one-half on the 1st and 15th days of each month, commencing October 1, 1964, and continuing thereafter until further order of the Court. Plaintiff is ordered to pay to defendant the sum of $150 forthwith. Plaintiff is ordered to pay the monthly installments on the family premises, and taxes and insurance, as they fall due, together with gardener and pool maintenance. Defendant is ordered to pay the utilities and the telephone. Defendant is ordered to return to the plaintiff, forthwith, the credit cards, and she is restrained from incurring any further obligation for which the plaintiff will be liable. The Court appoints the firm of Lipscomb, Hahn, and Brown, 4606 Hollywood Blvd., Los Angeles, No. 1-2106, to prepare an audit of the assets and liabilities of the plaintiff including the Hickman Bros., Inc., Western Mechanical Co., and L. A. Pipe & Supply in which the plaintiff has an interest. Plaintiff is ordered to pay for the cost of such audit. Counsel for the parties are to contact said accountants and discuss with them the nature and character of the audit. The accountants to first contact the accountant for the 3 firms in which the plaintiff has an interest. *Counsel for each of the parties is awarded the sum of $3,000 for and on account of attorney's fees, payable $1,500 forthwith, and balance payable at $500 per month, on the 1st day of each month, commencing November 1, 1964, and continuing thereafter until paid in full. Such sums to be paid out of the community funds before any distribution thereof is made. . . .*" (Italics added.)

On February 9, 1965, the respondent court held a hearing on an order to show cause why petitioner should not be held in contempt of court for his alleged willful violation of the foregoing order. The sufficiency of this order to show cause is not under atttack here. After hearing on the order to show cause *re* contempt, the trial court rendered judgment holding petitioner in contempt on four counts for his alleged willful failure to pay the attorneys' fees ordered to be paid as follows, $1,500 on September 22, 1964, $500 on November 1, 1964, $500 on December 1, 1964, and $500 on January 1, 1965. Pronouncement of sentence was continued until February 19, 1965, and on the latter date was again continued until February 23, 1965. On February 24, 1965, this court ordered a temporary stay of the proceedings below based upon the judgments of contempt.

Petitioner urges that the judgments of contempt are void on the grounds that there is no evidence to support them.

The petition shows that, in the complaint in the divorce action, it is alleged that the only community property of the parties consists of a bank account in the approximate amount of $2,500 at the First Western Bank, Sierra Madre, California, and that account is under the control of the wife and that petitioner has been unable to draw any funds therefrom. The petition further shows that the first amended cross-complaint, in nine subdivisions, lists numerous items of community property and that all of such allegations are denied in petitioner's answer thereto, and that there has been no finding or adjudication of the status of this property, whether community, separate or joint tenancy. The record further shows that petitioner has been paying $600 per month pursuant to the September 22, 1964, order for the support of his wife and two minor children, and is not in default as to that portion of the order. That, at the hearing on the order to show cause why petitioner should not be held in contempt, he moved for and obtained, over the objection of the wife, an order directing the sale of the family residence, valued at approximately $85,000, in order that his share of the proceeds might be applied on the payment of attorneys' fees. This motion was made notwithstanding the fact that title to said property is held in joint tenancy with his wife and, according to petitioner, is not, and has not been, adjudged to be community property. Petitioner claims that the home and $9,000 in furniture contained therein was given to him by his parents. He further claims that the proceeds from the sale of this property are the only funds from which he can pay the attorneys' fees ordered and that his share of such proceeds will be ample therefor.

As heretofore shown, the court awarded each counsel the sum of $3,000 for attorney fees payable out of community funds before any distribution thereof is made; it did not specifically order petitioner to make the payments therein specified without regard to the origin of the funds, and where, as here, there has been no determination of the character of the property of the parties and its character is contested, the record must show that the petitioner, at the times specified in the judgments of contempt, was possessed of sufficient community property which was available to be applied in payment of the sums ordered to be paid.

The reporter's transcript of the oral proceedings discloses the following testimony in support of the judgments.

Mr. John C. Reid, an accountant appointed by the court to audit and report on petitioner's financial status testified as follows:

"THE COURT: In your study of the books—the books and records, ledgers, accounts and what not, the assets and liabilities of the defendant—of the plaintiff here, rather, Shirley Glen Hickman, do those records reveal that he has—he had—had since September 22nd or now the ability to pay these sums of money? Or can you answer that question? THE WITNESS: There are legal technicalities involved in the way some of his assets are pledged to the bank or subordinated to the corporation indebtedness.

"THE COURT: I was talking about have you looked it over and if it was your money, would you have the money available to pay those attorneys' fees? THE WITNESS: I don't think so, because his bank accounts have practically nothing in them.

"THE COURT: Okay. THE WITNESS: And he has no securities ——

"THE COURT: You said no, then. THE WITNESS:—that I have been able to uncover to sell.

"THE COURT: All right."

On examination by the wife's counsel Mr. Reid testified further:

"Q. Mr. Reid, would you refer to the exhibit—to the report you prepared for the Court and particularly without wasting a lot of time, would you tell us what was the least amount of net worth of the plaintiff that you were able to ascertain from the records that were shown to you? A. The amount is $270,-563 as the minimum net worth.

"Q. All right. Now the answer you made to the Court with respect to whether or not he had the cash available was merely based upon the bank records that he showed you that you listed in Exhibit I that showed in one account $329, another account $3.00, and another account $28, is that correct? A. Yes."

There is nothing in the record to show and there has been no adjudication as to whether these assets were the separate property of the petitioner or community property. The witness Reid testified further from a summary he had prepared from books of account which he had examined. No foundation was laid for such books of account used by Mr. Reid in preparation of the summary used by him in his testimony

and the record does not disclose that such books were available in court. Some of the books used by him were those of Hickman Bros. Inc., and it is not shown that petitioner had any control or right to control the entries made on such books. When objections on the grounds of hearsay were made to conversations between Mr. Graham Stephenson, the CPA employed by Hickman Bros. Inc., and Reid concerning what Reid felt were certain discrepancies in petitioner's account as it was carried on the books of Hickman Bros. Inc. and Reid's claimed inability to obtain certain papers from Stephenson relating to certain personal expenditures of petitioner which Reid felt important to his audit, there being no evidence that Stephenson was employed by or was the agent of petitioner, the court stated ''Oh, please, don't go on with all of these kinds of technical objections. All it does is make me feel that your client is trying to deceive the Court, or his wife or something. That is all it does.''

When petitioner's counsel stated that, while Stephenson was the accountant for Hickman Bros. Inc., he was not the accountant for petitioner, the court stated ''Well, I'm not worried about that at all.'' Later in the record it was brought out that Stephenson had given Reid full opportunity to audit the books and accounts of Hickman Bros. Inc. but the cost of making the type of audit Reid wanted, that is, to trace funds withdrawn by petitioner and charged against his account on the corporation books, would have been prohibitive, and therefore, was not undertaken.

Petitioner's wife, called as a witness, testified that during the last three or four years he (petitioner) had carried on his person large sums of money. There is nothing in the record to show what she considered to be a large sum of money or that her husband possessed, on the dates here in question, any sums of money, of the character of community property sufficient to pay the attorneys' fees ordered. She testified further that her husband had told her that he had money on deposit in savings and loan associations but he never said where or how much. That he gave her money with which she purchased U. S. Savings Bonds in March 1963, and the bonds were turned over to her husband. Mr. Reisman, the wife's counsel, volunteered the statement in the record that they were ''Hundred dollar bonds and there are almost 35 of them, all in 1963.'' The wife testified that she had purchased 10 bonds on March 22, 1963, which she gave to her husband. She testified further than when the Vista Valley

Ranch was purchased in 1959, her husband told her that he had to use $50,000 from their savings account to make the down payment thereon. She testified that since petitioner has not been occupying the family residence, he has done the gardening work and maintained the swimming pool. She thinks, since separation, that her husband has lived in the maid's quarters situated on the premises occupied by his parents. Apparently the family home is encumbered, as the record discloses that, in response to the court's question directed to petitioner's counsel, "I assume you are paying it off?" counsel responded, "Yes." These payments, according to statements of the wife's counsel, amounted to approximately $400 per month plus interest and taxes. When petitioner's counsel asked permission to call his client to ask him questions relating to the sale of the home property which sale had just been ordered by the court, the court stated, "What do you want to call him for? I'm willing to make an order right now."

Petitioner then took the stand and testified that after September 22, 1964, he had no government bonds, nor bank accounts other than those testified to by Mr. Reid and that he had the sum of $10 on his person. He testified further that he had no source of income since September 22, 1964, other than his salary from Hickman Bros. Inc. That he purchased 35 bonds in 1963 out of his salary received from Hickman Bros. Inc. which he thought was approximately $15,600 per year.

The $3,500 in government bonds purchased in 1963, from petitioner's earnings, were community property. The only evidence relating to them at the time of the hearing on the order to show cause held February 9, 1964, was that they were no longer available to petitioner as a source from which he could pay the attorneys' fees ordered to be paid from community funds. The record further discloses from statements of counsel and the meager testimony contained in the record that petitioner was paying as ordered by the court well in excess of $1,000 per month on alimony, child support, house payments, taxes and insurance. The amount of taxes and insurance is not disclosed by the record but we may assume that they were substantial amounts in view of the value placed on the home property.

██ A hearing on an order to show cause why the alleged contemner should not be held in contempt is in its nature a criminal proceeding (*Uhler* v. *Superior Court,* 117 Cal.App. 2d 147, 151 [255 P.2d 29, 256 P.2d 90]; *Foust* v. *Foust,* 47

Cal.2d 121, 124 [302 P.2d 11]) and there must be substantial evidence that the contemner willfully and contemptuously refused to obey the order of the court. (*Uhler* v. *Superior Court, supra.*) ▮ The record of the oral proceedings contains 78 pages, most of which is devoted to colloquy between counsel and between the court and counsel. The only testimony on the subject of petitioner's ability to comply with the order is substantially set forth above. This would indicate that he had, from community funds, substantially less than $300 per month without any allowance for his living expenses, from which to pay the attorneys' fees. Furthermore, the order is in the nature of an allowance of attorneys' fees to be paid out of community funds and is not a direct order to petitioner to pay such fees. The order does not find any particular property in the possession or under the control of petitioner to be community property nor does it designate a particular piece of property out of which the fees should be paid. The record shows that the nature of the property, whether community, separate or joint tenancy, was contested.

Under these circumstances, and in view of the character of the order, petitioner was entitled to a finding and designation by the court as to what property the court expected him to use and from which he was to pay the attorneys' fees ordered. In the absence of such a finding or designation, petitioner had the right to assume that he was not required to pay the fees ordered out of what he honestly contended to be his separate property or property held in true joint tenancy with his wife.

The record does not contain substantial evidence to show that petitioner had the ability to comply with the order and that he willfully disobeyed it.

Each of the judgments holding petitioner in contempt is annulled and set aside.

Files, P. J., and Kingsley, J., concurred.