[S. F. No. 10288. In Bank.—July 13, 1923.]

RICHARD M. HOTALING et al., Petitioners, v. THE SUPERIOR COURT OF THE STATE OF CALIFORNIA, IN AND FOR THE CITY AND COUNTY OF SAN FRANCISCO, et al., Respondents.

[1] CONTEMPT — NATURE OF PROCEEDING—JURISDICTION.—Contempt of court is a specific criminal offense, and a contempt proceeding is not a civil action either in law or in equity, though it may be ancillary thereto, but is a separate proceeding of a criminal nature and summary character, in which the court exercises but a limited jurisdiction and in which the people of the state prosecute the action.

[2] ID.—PROCEDURE — COMPLAINT—AFFIDAVITS.—In a prosecution for constructive contempt the affidavits on which the citation is issued constitute the complaint; the affidavits of the defendant constitute the answer or plea, and the issues of fact are framed by the respective affidavits serving as pleadings.

[3] ID.—HEARING—EVIDENCE.—A hearing must be had upon the issues in a contempt proceeding, at which competent evidence must be produced. The proceeding is of such a distinctly criminal nature that a mere preponderance of evidence is insufficient, the defendant cannot be compelled to be sworn as a witness, and he cannot be convicted upon the uncorroborated testimony of an accomplice.

[4] CERTIORARI—SCOPE OF—EVIDENCE.—While the writ of *certiorari* is not a writ of error, it nevertheless extends to the whole of the record of the court below and even to the evidence itself where necessary to determine jurisdiction.

[5] ID.—REVIEWING CONTEMPT PROCEEDING — INSTRUCTION — INTENDMENTS.—In reviewing on *certiorari* an order adjudging parties guilty of contempt of court, the charge, the evidence, the findings, and the judgment are all to be strictly construed in favor of the accused, and no intendments or presumptions can be indulged in aid of their sufficiency. If the record of the proceedings, reviewed in the light of the foregoing rules, fails to show affirmatively upon its face the existence of all the necessary facts upon which jurisdiction depended, the order must be annulled.

---

1.  Whether proceeding for contempt for violation of injunction is civil or criminal, notes, 13 L. R. A. (N. S.) 591; 34 L. R. A. (N. S.) 874; 42 L. R. A. (N. S.) 793.

5.  *Certiorari* to review contempt proceedings, note, Ann. Cas. 1914D, 216.

[6] ID.—LACK OF EVIDENCE—QUESTION OF LAW.—Where the power to make an order adjudging parties in contempt of court depends upon the existence of facts as to which there is no evidence whatever, the question presented is one of law and subject to review by direct attack on a writ of *certiorari,* and such an order should be annulled.

[7] CONTEMPT—REFUSAL TO TRANSFER STOCK—CONSTRUCTION OF JUDGMENT—JURISDICTION.—Where a judgment of the superior court merely declares a certain party to be the owner and entitled to the immediate possession of certain corporate stock, an order adjudging the president, the secretary, and corporation guilty of contempt of court in refusing to cancel the certificate therefor, standing in the name of one against whom the judgment ran and to reissue the same to a stranger to the suit, to whom it was claimed to have been assigned by the adjudged owner, is in excess of the jurisdiction of the court and will be annulled on *certiorari,* where the judgment did not require a transfer of the stock to the one adjudged to be the owner thereof.

[8] ID.—CONSTRUCTIVE CONTEMPT—WHAT CONSTITUTES.—To constitute a constructive contempt of court for the violation of an order of court there must have been an omission to perform an act which was required by the terms of the original order.

PROCEEDING in Certiorari to review an order of the Superior Court of the City and County of San Francisco directing cancellation and reissuance of a certificate for certain stock. Franklin A. Griffin, Judge. Order annulled.

The facts are stated in the opinion of the court.

Peter F. Dunne, W. H. Metson, T. J. Sheridan, R. G. Hudson and I. P. Nieto for Petitioners.

Gavin McNab, Nat Schmulowitz and R. P. Henshal for Respondents.

MYERS, J.—Petitioners applied for a writ of *certiorari* to review an order of the court below, after the going down of the *remittitur* in the action in this court, wherein Lavinia J. Hotaling was plaintiff and Richard M. Hotaling and the Hotaling Estate Company were defendants (*Hotaling* v. *Hotaling,* 187 Cal. 695 [203 Pac. 745]), adjudging petitioners in contempt of court, and directing said The Hotaling Estate Company and Richard M. Hotaling, as its president, and C. N. Taylor, as its secretary, to cancel certificate No. 15 for 2,499 shares of its capital stock, standing in the name

of Richard M. Hotaling and indorsed in blank by him, and delivered to Lavinia J. Hotaling, and also indorsed in blank by Lavinia J. Hotaling, upon presentation thereof by the Union Trust Company, and thereupon to reissue to and in the name of the said Union Trust Company a certificate for one share of said stock and ten certificates for 125 shares each, and one certificate for 1,248 shares of said stock.

Said demand for the cancellation and reissuance of said stock was made by said Union Trust Company and Lavinia J. Hotaling, as assignor of said Union Trust Company, accompanied by the necessary stamps required for said purpose, requesting that the president and secretary of said corporation do each make the proper indorsement and writing, to accomplish said transfers. It was claimed in connection with said transfers that legal assignments of said stock had been made from Lavinia J. Hotaling to said Union Trust Company. Said demand for transfer was in writing, signed by said Lavinia J. Hotaling, and said Union Trust Company, for a transfer out of her name into that of the Union Trust Company. It was made in pursuance of a clause in the final decree in the said cause of *Lavinia J. Hotaling* v. *Richard M. Hotaling and Hotaling Estate Company,* as finally affirmed by this court, as follows, to wit:

"II.—That the plaintiff, Lavinia J. Hotaling, be and she is hereby declared to be the owner and entitled to immediate possession of 2499 shares of the capital stock of the Hotaling Estate Company represented by certificate No. 15, issued in the name of Richard M. Hotaling, free and clear of all claims on the part of said Richard M. Hotaling."

Richard M. Hotaling, personally and as president of The Hotaling Estate Company, and The Hotaling Estate Company were each a party to said decree and were bound by its terms. C. N. Taylor, as secretary of The Hotaling Estate Company, was also bound by the decree as fully as if he had been a formal party thereto. His functions as such secretary were confined to carrying out the directions of his principal and in so doing he would be acting as the agent of his principal. All the parties to the present proceeding for review were therefore bound to obey the terms of the decree.

The rights of an owner of shares of stock in a corporation of the character of the Hotaling Estate Company, with respect to the possession and transfer of the same, are set

forth in section 324 of the Civil Code. It provides that when the capital stock is divided into shares and certificates therefor are issued "such shares of stock are personal property . . . and may be transferred by indorsement by signature of the proprietor, his agent, attorney, or legal representative, and the delivery of the certificate; but such transfer is not valid, except as to the parties thereto, until the same is so entered upon the books of the corporation as to show the names of the parties by whom and to whom transferred, the number of the certificate, the number of designation of the shares, and the date of the transfer; . . . Whenever any officer of the corporation shall refuse to make entries upon the books thereof, or to transfer stock therein, or to issue a certificate or certificates therefor to the transferee as provided by this and the next preceding section, each officer shall be subject to a penalty of four hundred dollars, to be recovered as liquidated damages, in an action brought against him by the person aggrieved." The preceding section (323) provides that the corporation must issue certificates for stock therein, when fully paid up, signed by the president and secretary. There are special provisions directing the course to be taken when the stock is not fully paid up, but they do not apply in this case, for the stock was fully paid.

The order here under review presents two aspects. In one, it adjudges the petitioners guilty of contempt and imposes a penalty. In the other, it commands them to make the transfer of the stock upon the corporate books in accordance with the demand made as above recited.

[1] Contempt of court is a specific criminal offense. (*McClatchy* v. *Superior Court,* 119 Cal. 413 [39 L. R. A. 691, 51 Pac. 696]; *Ex parte Gould,* 99 Cal. 360 [37 Am. St. Rep. 57, 21 L. R. A. 751, 33 Pac. 1112]; *Ex parte Hollis,* 59 Cal. 408; *Reymert* v. *Smith,* 5 Cal. App. 380 [90 Pac. 470].) A contempt proceeding is not a civil action either at law or in equity (*Gale* v. *Tuolumne Water Co.,* 169 Cal. 46 [145 Pac. 532]; *Ex parte Gould, supra*), though it may be ancillary thereto (*Mitchell* v. *Superior Court,* 163 Cal. 423 [125 Pac. 1061]), but is a separate proceeding of a criminal nature and summary character (*McClatchy* v. *Superior Court, supra; In re McCarty,* 154 Cal. 534 [98 Pac. 540]; *Schwarz* v. *Superior Court,* 111 Cal. 106 [43 Pac.

580]; *Selowsky* v. *Superior Court,* 180 Cal. 404 [181 Pac. 652]), in which the court exercises but a limited jurisdiction *(In re McCarty, supra; Otis* v. *Superior Court,* 148 Cal. 129 [82 Pac. 853]; *Reymert* v. *Smith, supra),* and in which the people of the state prosecute the action *(Ex parte Gould, supra).*

[2] In a prosecution for constructive contempt the affidavits on which the citation is issued constitute the complaint. *(Hutton* v. *Superior Court,* 147 Cal. 156 [81 Pac. 409]; *Frowley* v. *Superior Court,* 158 Cal. 220 [110 Pac. 817]; *Selowsky* v. *Superior Court, supra.)* The affidavits of the defendant constitute the answer or plea *(Mitchell* v. *Superior Court, supra),* and the issues of fact are framed by the respective affidavits serving as pleadings. *(In re Buckley,* 69 Cal. 1 [10 Pac. 69]; *Mitchell* v. *Superior Court, supra.)* [3] A hearing must be had upon these issues *(McClatchy* v. *Superior Court, supra; In re Buckley, supra;* Code Civ. Proc., sec. 1217), at which competent evidence must be produced. *(In re Buckley, supra; Goodall* v. *Superior Court,* 37 Cal. App. 723 [174 Pac. 924]; Code Civ. Proc., secs. 1218, 1220.) The proceeding is of such a distinctly criminal nature that a mere preponderance of evidence is insufficient *(In re Buckley, supra),* the defendant cannot be compelled to be sworn as a witness *(Ex parte Gould, supra),* and he cannot be convicted upon the uncorroborated testimony of an accomplice *(In re Buckley, supra).*

The decision of this court in *Ex parte Selowsky,* 189 Cal. 331 [208 Pac. 99], does not conflict with the foregoing rules. What was there *decided* was that the failure of the clerk to file the affidavit which constituted the complaint at the time it was presented to the court was a misprision of a ministerial officer, amounting merely to an irregularity; that the rights of the defendant were fully protected by the service upon him of a copy of the affidavit with the order to show cause, and that he could not have been prejudiced thereby. What was there *said* to the effect that a prosecution for contempt is a proceeding of a civil nature was wholly unnecessary to the decision and therefore *obiter,* because whether it be of a civil or criminal nature, the procedural steps therein are undoubtedly those prescribed by sections 1209–1222 of the Code of Civil Procedure.

[4] While the writ of *certiorari* is not a writ of error, it nevertheless extends to the whole of the record of the court below and even to the evidence itself where necessary to determine jurisdiction. (*Schwarz* v. *Superior Court, supra; McClatchy* v. *Superior Court, supra; Great Western Power Co.* v. *Pillsbury,* 170 Cal. 180 [149 Pac. 35].) [5] In reviewing this proceeding, the charge, the evidence, the findings, and the judgment are all to be strictly construed in favor of the accused (*Schwarz* v. *Superior Court, supra*), and no intendments or presumptions can be indulged in aid of their sufficiency. (*Frowley* v. *Superior Court, supra.*) If the record of the proceedings, reviewed in the light of the foregoing rules, fails to show affirmatively upon its face the existence of all the necessary facts upon which jurisdiction depended, the order must be annulled. (*Frowley* v. *Superior Court, In re McCarty,* and other cases above cited.)

The record here shows that many, if not most, of the material facts alleged in the affidavits which constituted the complaint are directly controverted by denials in the affidavits filed in behalf of the defendants. It not only fails to disclose any competent evidence in support of the allegations thus traversed, but it shows that *no evidence whatever was received.* [6] "Where the power to make the order depends upon the existence of facts as to which, as here, there is no evidence whatever, the question presented is one of law and subject to review by direct attack on a writ *of certiorari,*" and such an order should be annulled. (*Goodall* v. *Superior Court, supra.*)

It is true that the defendants' affidavits were not filed on the return day of the citation. But the respondents' return herein shows that they were filed shortly thereafter, pursuant "to an order duly given and made," by which they "were ordered filed as of the twenty-first day of March, 1922 [the return day], and prior to the submission for decision upon the merits of the application on the said date argued and submitted to the respondents herein," therefore they must be here considered as having been on file at that time.

[7] But we think that if all the facts alleged in the affidavits constituting the complaint had been proved by competent and conclusive evidence, this order should still be annulled because those facts do not amount to a contempt

of court; and because the order goes beyond the terms of the original judgment of which it is claimed to be in execution.

The order here under review directed the petitioners herein to transfer upon the corporate books the shares of stock in question and to issue new certificates therefor—not in the name of Mrs. Hotaling, the judgment plaintiff, but in the name of the Union Trust Company, trustee—a stranger to the action. It further adjudged the petitioners in contempt of court and directed that in the event of their failure to comply with its requirements within seven days thereafter, they should stand committed to the county jail until such compliance. This order is claimed to be, and recites that it is, "made in execution of the final decree," above referred to.

The court found that the petitioners "have willfully and persistently refused to comply with the directions of said final decree in not causing the transfer of the stock to be made *to said Union Trust Company of San Francisco, as required by said final* decree." (Italics ours.) Concededly, no such requirement, nor anything remotely approaching it, in express terms, is to be found in said decree. The decree contains six different injunctions, four of them prohibitory and two of them mandatory in character, but it is not claimed that any of these injunctive provisions has been violated in any respect. The provision solely relied upon by respondents is an adjudication "that the plaintiff, Lavinia J. Hotaling, be and she is hereby declared to be the owner of and entitled to the immediate possession of 2499 shares . . . free and clear of all claims on the part of the said Richard J. Hotaling."

This provision is purely declaratory. A somewhat analogous and even stronger situation is found in *Dewey* v. *Superior Court,* 81 Cal. 64 [22 Pac. 333]. In that case a decree had been entered expressly enjoining Dewey, the defendant therein, "from maintaining a certain dam or other obstructions in Mariposa Creek, and from maintaining a certain ditch or canal of defendant in any condition that would interfere with the rights of plaintiff" as decreed in the judgment. Thereafter contempt proceedings were instituted against Dewey for the violation of this injunction, in failing to remove the dam or to fill up the mouth of the

ditch, and an order was made substantially analogous to the one here under review. Reviewing that order, the court said:

"But notwithstanding the omission of all words of a mandatory character in the original injunction, we find the court, in this proceeding for contempt, and upon the faith of the finding above quoted, 'ordered, adjudged and decreed that he, the said Henry Dewey, be committed to the custody of the sheriff of Merced County, and that said sheriff confine him in the county jail of this county until all dams and obstructions placed in said Mariposa Creek by said Dewey, or through his procurement, which will obstruct the flow of the water therein, be dug out and removed therefrom, and until the ditch leading from said creek be filled up substantially so that the waters of said creek cannot be diverted thereby.'

"This order we think was clearly in excess of the jurisdiction of the court. It is an order which can only be made upon and in consequence of a conviction for contempt, which 'consists in the omission to perform an act which is yet in the power of the person to perform,' and which *has been required by the terms of the original order* which the party is charged with having violated. (Code Civ. Proc., sec. 1219.) The original order or injunction did not require him to perform the act which is by this order enjoined upon him, and for the nonperformance of which it is now ordered that he be imprisoned." (Italics ours.)

If, in the Dewey case, a command to remove the dam could not be implied from a decree enjoining the further maintenance thereof, certainly in the instant case a command to transfer the stock on the books to the Union Trust Company is not to be implied from a purely declaratory adjudication that Mrs. Hotaling is the owner and entitled to the possession thereof. [8] That case, which has never been overruled, stands as express authority for the rule that to constitute a constructive contempt of the sort here claimed there must have been an "omission to perform an act which has been *required by the terms of the original order*." The terms of the order here relied upon do not expressly require the performance of any act. They merely declare the fact of the ownership of the stock. There is a complete "omission of all words of a mandatory character." There is not

even, as there was in the cited case, a prohibitory injunction which might be said to have a mandatory aspect. Assuming that a contempt can be predicated upon the nonperformance of a requirement which is *implied* but not expressed by the terms of the original order, the most that can be fairly implied herein is that the defendants were required to transfer the stock upon the corporate books *into the name of Mrs. Hotaling,* so that she could have complete possession thereof. But they are not in default in this respect, because they have never been given an opportunity so to do. They aver that they have always been ready and willing to make this transfer, and there is no evidence to the contrary. If she had demanded the transfer into her own name and that demand had been complied with, then we think the decree would have been fully executed. Suppose, then, that five years later she had demanded another transfer from her own name to the name of the Union Trust Company, and her demand had been refused. Or suppose that five years later she had charged the defendants with misapplying corporate funds, or paying a dividend not earned. Would it be contended that under such circumstances the defendants could be imprisoned for contempt of court, on the theory that their acts were in violation of her rights of ownership as declared by the original decree? The suggested situations are identical, in legal effect, with the one now before the court.

Conceding that Mrs. Hotaling is entitled as of right to have the stock transferred on the books to the trust company, that right is predicated, not upon the judgment, but upon the *fact* of her ownership, together with the provisions of section 324 of the Civil Code. A refusal to make the transfer may be in violation of her rights of ownership and in violation of the law as there expressed. But a violation of law does not *per se* constitute contempt of court. Neither does a violation of rights of ownership, even though they have been ascertained and declared by a judgment, unless it consists in doing something which was prohibited, or in failing to do something which was required, *by the terms of the judgment.*

The same considerations apply with equal force to the Union Trust Company, whether it be regarded as transferee of the shares of stock or as assignee of an interest in

the judgment. Conceding that an assignee of a judgment, or of an interest therein, succeeds to all the rights, or to the rights *pro tanto,* of the judgment creditor, certainly he acquires no greater rights therein or thereunder than were possessed by his assignor. Assuming the validity of the transfer from Mrs. Hotaling to the trust company (which petitioners do not concede), and conceding that the trust company is therefore an assignee *pro tanto* of the judgment, the fact still remains that the order here under review commands the petitioners to do that which is not required of them by the terms of the original judgment.

The order is annulled.

Wilbur, C. J., Waste, J., Lawlor, J., Kerrigan, J., Richards, J., *pro tem.,* and Seawell, J., concurred.