[Crim. No. 6279. Second Dist., Div. Three. June 6, 1958.]

In re BARBARA ANN BURNS, a Minor, etc., on Habeas Corpus.

138

Harry E. Weiss for Petitioner.

William B. McKesson, District Attorney (Los Angeles), and Ralph F. Bagley, Deputy District Attorney, for Respondent.

SHINN, P. J.—Barbara Ann Burns, a minor, was adjudged to be in contempt of court for being late in her appearance as

a witness at an adjourned session of the superior court, and she was sentenced to serve five days in jail.

We issued habeas corpus; a return was filed by the sheriff; the cause came on for hearing; it was stipulated that the petition be deemed a traverse to the return. Argument was heard and the matter was submitted.

The record discloses the following facts. On April 3, 1958, there were pending in the superior court two actions in which David James Mack was a defendant, one a prosecution for violation of the narcotic laws, the other a hearing relative to alleged violation of probation. These matters were continued to April 28. Barbara Ann Burns was under subpoena as a witness for the People. Some time before April 28 she was ordered to show cause why she should not testify in the trial of Mack, a proceeding authorized by section 1324 of the Penal Code. The matters before the court on April 28 were continued to May 12 at 9 a. m. Miss Burns, present with her counsel, Mr. Weiss, and all other witnesses were instructed to return at that time without further order, notice or subpoena. May 12 at 9:35 a. m., the court called *People* v. *Mack,* stating "This is the time set for the hearing on the Order to Show Cause as to why Barbara Burns should not testify in these proceedings. Is Miss Burns present?" The prosecutor stated that she was not present and that the hearing had been set for 9 a. m. "THE COURT: That is correct. It is now 9:35 o'clock." A bench warrant was ordered issued for the arrest of Miss Burns and bail was fixed at $500. Then followed a discussion with respect to a continuance. Present at the time were Mr. Ray Howard, guardian of the person of Miss Burns, and Mr. Weiss, her attorney. The court addressed Mr. Howard: "Do you know where she is?" to which he replied "She lives close in town. I saw her Saturday afternoon late. She was going to talk to Mr. Weiss [her attorney] over the week-end, but I have no idea where she is or why she is not here now." There was further discussion with respect to a continuance. The court then stated: "To keep the record straight, I will set aside the order fixing bail at $500, and instead I will fix bail at $2,000." The matter was ordered continued to May 19 at 9 o'clock. At 9:45, Miss Burns appeared; at 10:02 the court reconvened; the proceedings which followed are set out in the margin.[1]

---

. [1]"THE COURT: People of the State of California versus David James Mack. In that matter, this is the time set for the hearing on the Order to Show Cause why Barbara Burns should not testify in these proceed-

The court ordered Barbara into the custody of the sheriff, whereupon Mr. Weiss addressed the court and the court responded as follows: "MR. WEISS: Your Honor, may counsel respectfully be heard? THE COURT: You may. MR. WEISS: This is not to justify her tardiness to this court but to explain what this girl has been going through. She has been going to doctors and she has been taking treatments. She has been listening to everybody. THE COURT: Everybody but the court. MR. WEISS: I agree with your Honor. She has no money. She called both our numbers, Mr. Howard's and mine. By the time the messages got to us we told her 'Take a cab. We will meet you.' Mr. Howard was looking for the cab. I was looking for the cab. The cab is still waiting downstairs, your Honor. I don't believe this has the element of contempt for this court. She is frightened. She is scared. She would not disregard the court's order. She is a sick girl. It is part of her whole problem, your Honor. I respectfully urge your Honor to withdraw your order sentencing her to five days. She is going to go for treatment with Dr. Knox now. She has undergone a lot and she is trying to rehabilitate herself. If I were of the opinion she was deliberately trying to defy this court, I would be the last to speak up for her. I have not been able to get in touch with her. She has no phone. She lives with someone else. It's been quite a problem all around. She has no family to help her, only her guardian, who tried strenuously to help her as well as he could. If I thought the five days were due her because she intentionally showed disrespect to this court, or any court, I would not stand before your Honor and ask that courtesy. I do not believe it was done intentionally. She is a confused, sick girl. In the

ings. This case was called early this morning. Barbara Burns was not present. The clerk informs me that Barbara Burns is now present. Where were you this morning, Miss Burns? Stand up, please. (Miss Burns arose.) MISS BURNS: (Sobbing out loud while addressing the court) I was home, your Honor, I was supposed to have a ride down from my home. Some friends were to take me down. I thought it was 9:30 o'clock. The people never came after me. So I called my attorney and my guardian. They told me to take a cab and they would pay for it when I got here. The cab is still downstairs. THE COURT: You were here last Monday, were you not? MISS BURNS: Yes, sir. THE COURT: You heard me order you back here at 9:00 o'clock this morning, did you not? MISS BURNS: I was so confused. THE COURT: Did you hear me order you back? MISS BURNS: I heard you order me back, but I don't recall the time, sir. I thought it was 9:30. THE COURT: I told you at 9:00 o'clock. You were present with your counsel. The court finds you in contempt for failing to comply with the court's order. You are sentenced to five days in the County Jail for failing to comply with the court's order. The bench warrant issued by the court is ordered withdrawn. You may proceed with the hearing on the Order to Show Cause at this time.''

future, I will personally send someone for her and pick her up, your Honor. THE COURT: I am trying to dispose of this matter this morning. So we will take your argument under submission.''

In the hearing that ensued it appeared that Miss Burns was under prosecution in the state court as a narcotic addict and in the Federal court for failing to register as a narcotic addict in crossing the Mexican border at Tijuana. Miss Burns refused to testify in *People* v. *Mack* upon the ground that her testimony would tend to incriminate her, and the court ruled that, due to the pending action in the Federal court, she was justified in her refusal to testify, and excused her from giving any testimony.

After the court announced its ruling, further proceedings were had as follows: ''MR. WEISS: Your Honor, with all humbleness now, I once again in all deference and respect to this court ask your Honor to see fit within you to recall your five-day sentence. THE COURT: No, I think it should stand. I think she should serve five days for violating the court's order. She takes orders from everybody else but the court. It's about time we taught her and other persons who have no regard for court orders, who go around the street and do as they please, and then they come in and ask the court to excuse them because they didn't see fit to come in here at the proper time. That order was made. It was explicit and definite, and she understood it. She was represented by counsel at the time. There was no reason why she should not have been here. We waited until almost a quarter of 10:00 o'clock this morning before she came into this courtroom. The order will have to stand.''

■ The willful failure to comply with a valid order of court may be punished as a misdemeanor. (Pen. Code, § 166.) ■ Every judicial officer has the power to punish for contempt the disobedience of his orders. (Code Civ. Proc., §§ 177, subd. 2; 178; 1991.) ■ It is an essential element of contempt that the conduct of an accused must be willful in the sense that it is inexcusable. ■ A tardy appearance in court, if not willful, is not a criminal offense nor does it, alone, constitute a contempt of court, even if it falls short of prompt compliance with the process or orders of the court. If the rule were otherwise, guilt could be fastened upon persons whose failure to make a prompt appearance in court was unavoidable and without the slightest intention of disobeying an order of the court. The circumstances in which a tardy

142

arrival would be excusable and without any breach of duty to the court are too numerous to mention. ■ With our departments of the superior court widely scattered throughout the county and with traffic and transportation conditions as they are, we cannot approve as a precedent a practice under which a late-comer would be adjudged in contempt without a fair judicial inquiry and decision as to the validity of any excuse he might offer. ■ We would not construe "willful" as pertaining to contempt as meaning only a deliberate intention to disregard a court order, but rather as encompassing an indifferent disregard of the duty to obey it promptly.

Our sole question, therefore, is whether there was substantial evidence before the superior court to justify a determination that Barbara was guilty of contempt. (*Bridges* v. *Superior Court*, 14 Cal.2d 464 [94 P.2d 983].)

It appears from the minutes of the court, as shown in the return, that on May 12 the court peremptorily declared Barbara to be in contempt and remanded her to the custody of the sheriff under a sentence of five days in jail. The clerk's minutes of that date recite these facts and nothing more. We issued our writ May 13. Barbara was released on bail May 14. On May 15, the court signed an order reciting the proceedings and finding that Barbara "did willfully and unlawfully and without valid excuse disobey said order and unlawfully interfere with the proceedings in said trial etc." From these and other facts it appears that the court regarded mere failure of Barbara to appear at 9 o'clock as a contempt of court, and a serious offense at that, warranting imposition of the maximum term of imprisonment, unaccompanied by a fine.

■ It seems scarcely necessary to say that a proceeding in contempt is essentially criminal in character. (*Hotaling* v. *Superior Court*, 191 Cal. 501, 504 [217 P. 73, 29 A.L.R. 127], and cases cited.) The accused has the benefit of the presumption of innocence. (*In re Lake*, 65 Cal.App. 420, 427 [224 P. 126].) ■ An intent to commit the forbidden act is as essential to guilt as in the case of a criminal offense. (*Uhler* v. *Superior Court*, 117 Cal.App.2d 147 [255 P.2d 29, 256 P.2d 90].) ■ And, of course, the accused must be accorded the same opportunity to defend against a charge of indirect contempt, that is to say, where the facts are unknown to the court, as in a criminal prosecution for contempt as a misdemeanor under section 166 Penal Code, or any other criminal offense. (17 C.J.S. pp. 77, 116.)

The learned deputy district attorney says: "... the conclusion of the court that said failure to appear was willful is a conclusive determination and the writ of habeas corpus should not lie." The statement is subject to the qualification that the determination is conclusive if it is based upon substantial evidence at a hearing in which the accused is afforded a fair opportunity to defend. There was no such opportunity afforded Barbara or her counsel. At the very inception of the proceeding the court announced its judgment. Barbara's statement was in response to the court's question: "Where were you this morning, Miss Burns? Stand up, please." The People say her statement was not made under oath. She cannot be blamed for that omission. The court asked for her unsworn statement and immediately upon receiving it, ruled against her. Her answers should have been treated as a statement of the facts which were relied upon to excuse her tardiness and which could be proved, if necessary. Her counsel were given no opportunity to address the court until Barbara had been sentenced to jail. One whose counsel has been given no opportunity to produce evidence, or even to be heard in a trial until after the court has pronounced judgment can justly complain that he has been denied due process of law.

In our opinion the only reasonable conclusion from the evidence is that Barbara was not guilty of a willful disobedience of the order to return to court at 9 o'clock. She is a minor. Mr. Howard, a respected and experienced attorney at the Los Angeles bar, is the guardian of her person. He was not appointed to that position by the court without good reason. The fact that he was appointed guardian implies a degree of incompetency of his ward. Her conduct was to be judged in the light of that fact. Barbara stands accused of being a narcotic addict and of failing to register as such. She had every reason not to affront the court. At the first opportunity which, unfortunately, was after judgment had been pronounced, reputable and respected members of the bar assured the court of the truth of Barbara's statements respecting her efforts to make a timely appearance in court. When they learned of her dilemma, the failure of her friends to call for her and the fact that she had no money to pay for a cab, both gentlemen promised to pay her cab fare and went downstairs to await her arrival in the cab. Even the cooperative and indulgent cabbie waited outside; and Barbara arrived in less than 10 minutes after the case was called.

 The power of the court to punish for contempt is indeed broad, but it is not unlimited. It is a drastic remedy, to be employed only when necessary to the proper and orderly conduct of judicial proceedings. A charge of contempt of court must be considered judicially as the question of guilt of any criminal offense must be, and a judge may not punish for contempt merely because he has suffered annoyance through the failure of some order he has made to receive instant observance.

We are convinced that the trial judge, although with the best of motives, acted hastily, without due deliberation and without consideration of the gravity of the decision he had to make. He did not question the truth of Barbara's statements; he did not doubt the word of the attorneys who described Barbara's efforts to reach court. As a result, the unfortunate young woman was found guilty of contempt peremptorily, and without giving her or her counsel an opportunity to present a defense by the introduction of evidence of the facts they asserted. Moreover, there was an entire want of evidence to justify a conclusion that Miss Burns had any intention whatsoever to disobey the order of the court to attend upon an adjourned session of the hearing. The conclusion that she willfully disobeyed the order of the court is contrary to the evidence, direct and circumstantial, and to the presumption that she was not guilty of willful disobedience. We think the efforts put forth by Barbara would have been quite sufficient to excuse the tardiness even of one who was *sui juris*. The facts were not in dispute. No fact, circumstance or inference indicated an intention on the part of Barbara to disregard the court's order. A finding of guilt is not justified in the absence of affirmative evidence of guilt. Here there was none. The court concluded that being late to court was, itself, a contempt, and that the explanation given, if true, did not constitute a defense. We are unable to agree.

The order must be annulled for the reason that there was no evidence of willful disobedience of the court's order and for the further reason that Barbara was given no opportunity to present evidence in her defense. There was, in reality, no trial of the issue.

The order adjudging petitioner in contempt is annulled; the petitioner is ordered discharged from custody.

Vallée, J., and Patrosso, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.