[Civ. No. 32464. Second Dist., Div. One. Mar. 21, 1968.]

HERBERT F. LITTLE, JR., Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; SUZANNE M. LITTLE, Real Party in Interest.

Baker, LeBel & McNairy and Robert N. Baker, Jr., for Petitioner.

John D. Maharg, County Counsel, and Jean Louise Tarr, Deputy County Counsel, for Respondent.

Lincoff & Ordin and Aaron L. Lincoff for Real Party in Interest.

McCOY, J. pro tem.*—This is a proceeding to review an order of the respondent court adjudging the defendant, petitioner here, in contempt of court for allegedly disobeying an order made in action number WE D 9070 entitled Little v. Little.

In January 1966 plaintiff commenced an action against her husband, the defendant, for a divorce and for the custody of the minor child of the parties. By his cross-complaint filed in October 1966, petitioner sought among other things to obtain custody of the minor child.

In November 1966 plaintiff noticed the deposition of one Morton Shane, M.D., a psychoanalyst, and one Dolores Hoffman, a psychotherapist, both of whom defendant had consulted in their professional capacities. On petitioner's motion for a protective order with respect to these depositions, the court held, in January 1967, that petitioner by his pleadings had placed in issue his fitness to have the custody of the child, and that the testimony of the two witnesses sought to be examined by plaintiff was not privileged under section 1881, subdivision 4, of the Code of Civil Procedure.[1] Following this order the depositions of Shane and Hoffman were renoticed. On the taking of his deposition Dr. Shane refused to answer certain specific questions relating to his treatment of defendant on the ground that the questions put to him sought to invade the patient-physician privilege. The witness Hoffman refused to answer on the ground that the questions put to her sought to invade the psychotherapist-patient privilege. In each case the privilege was claimed on behalf of petitioner by his attorney.

As a result of the refusal of the two witnesses to answer the questions put to them at their depositions, plaintiff noticed a motion so far as material here for an order: '' (1) To compel Defendant to execute written consent in favor of Morton Shane, M.D., and Dolores Hoffman, as Deponents, authorizing

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

[1]It does not appear that the court considered the question of privilege in the light of the relevant sections of the Evidence Code which went into effect January 1, 1967.

said deponents to answer questions on oral interrogatories; (2) Directing the said Morton Shane, M.D. and Dolores Hoffman to answer questions on oral interrogatories; . . . (5) Setting times for resumption of the deposition of the said Morton Shane, M.D. and Dolores Hoffman.''

This motion was granted on April 5, 1967, at which time the court made the following order. ''The court finds that by Paragraph 6 of his cross-complaint filed October 21, 1966 (p. 2, lines 25-28), defendant in alleging that he 'is a fit and proper person to be awarded custody of the minor child of the parties' has placed in issue his condition generally and his mental and emotional condition in particular. The court concludes that statutory exclusions prevent application of either the physician-patient or psychotherapist-patient privilege. Evidence Code §§ 996(a) and 1016(a). It Is Ordered that: 1. Plaintiff's motion is granted as prayed as to items 1, 2, and 5; and pursuant thereto, said depositions shall be resumed upon 10 days' written notice. 2. In case of defendant's failure or refusal within 10 days after service of notice of this ruling to execute the written consent referred to in item 1 of said motion, the Los Angeles County Clerk is appointed commissioner to execute said consent on defendant's behalf on the ex parte application of plaintiff.'' The record shows that the attorneys for both parties were notified of this order by the court by mail, and that defendant was notified of the order by plaintiff by notice mailed to his attorneys a week later. The order was served on defendant personally on May 19.

On May 15 petitioner's attorney by letter informed plaintiff's attorney that ''Mr. Little has *elected not* to sign a consent for the taking of the depositions of Dr. Morton Shane and Dolores Hoffman.'' On the basis of this letter plaintiff's attorney applied for and obtained an ex parte order on May 22 reading as follows: ''1. That pursuant to the provisions of the aforementioned Minute Order of April 5, 1967, Mr. Art Goodman, Chief Deputy Clerk of the West District, Office of the County Clerk of this Court, be and he is hereby authorized and directed, as a Commissioner of this Court, to execute, on behalf of the defendant herein, the accompanying written Consent in favor of Morton Shane, M.D. and Dolores Hoffman, M.S.W. as deponents, authorizing said deponents to answer questions on oral interrogatories.'' The clerk complied with this order on May 23.[2]

---

[2]The document signed by the clerk reads: ''I, Mr. Art Goodman, Chief Deputy Clerk of the West District Office of the County Clerk of

It appears from plaintiff's statement of additional facts filed in opposition to the petition now before us that on June 16, 1967, and pursuant to notice of taking of deposition dated June 9, 1967, a copy of which notice was mailed to defendant's counsel on said date, the deposition of Dolores Hoffman was taken. Defendant's counsel was present throughout the taking of the deposition. A conformed copy of the written consent executed by the county clerk as the commissioner was made a part of the record of the proceedings on the taking of the deposition of Dolores Hoffman as Exhibit ''1'' for identification. At no time during the taking of the deposition of Dolores Hoffman did petitioner's attorney voice any objection thereto. Dolores Hoffman answered every question put to her. These questions addressed themselves to the matter of the existence or nonexistence of an emotional illness or disturbance in or affecting defendant. Petitioner's attorney asked no questions of Dolores Hoffman during the taking of her deposition. It further appears from that statement and from plaintiff's declaration on which the contempt proceedings is based that the deposition of Dr. Shane was resumed on July 8, at which time he again declined to testify apparently on the ground that he would not waive the privilege in the absence of a written consent from the petitioner. It does not appear, however, that Dr. Shane was then informed of the ''consent'' signed by the clerk.

On August 29 plaintiff obtained an order requiring petitioner to show cause why he should not be adjudged in contempt for willfully disobeying the order of April 5, 1967, as set forth in the declaration of plaintiff. Plaintiff in her declaration incorporates a copy of the order of April 5 by reference, alleges that notice of the order was served by mail on petitioner's attorney on April 12 and on petitioner personally on May 19, and that petitioner had the ability to comply with the order but ''wilfully failed and refused to do so.'' She also alleges that the letter of May 15 from petitioner's attorney ''reflects that the defendant knew of the Court's order and that defendant refuses to sign the consent referred to in the order of April 5, 1967, and then alleges the refusal of Dr. Shane to testify at his deposition on July 8''

this Court, pursuant to Orders of Court heretofore made on April 5, 1967, and May ——, 1967, and as a duly appointed Commissioner of this Court, do hereby consent, on defendant's behalf, to MORTON SHANE, M.D. and DOLORES HOFFMAN, M.S.W., the persons named in proceedings had in this action as deponents, answering questions on depositions on oral interrogatories to be put to them on behalf of plaintiff through her counsel, all as more specifically provided in the aforementioned Orders.''

on the ground "that the physician patient privilege existed and that he would not be authorized to waive it absent a written consent from the defendant, Herbert F. Little, Jr., to do so."

The contempt proceedings were heard on September 14, 1967, at which time both parties testified. Plaintiff's declaration on which the order to show cause was based, and the letter of May 15 from defendant's attorney were received in evidence. The court found that petitioner had knowledge of the order of April 5 requiring him to execute the written consent. The court also found: "2. On May 22, 1967, this court ordered the County Clerk as Commissioner to sign said consent on defendant's behalf. 3. At all times between May 19 and 22, 1967 defendant had the ability to sign said consent. 4. At all times between said dates defendant wilfully disobeyed said order in that he failed and refused to sign said consent. 5. On this date, September 14, 1967 in open court, defendant signed and delivered a written consent which complies with said order of April 5, 1967." Thereupon the court concluded "that defendant is guilty of contempt on one count," and ordered him to return on November 17 for sentence.

■ In our opinion the order adjudging petitioner in contempt of court is void.

■ "Contempt proceedings are criminal in nature, and the prescribed procedural safeguards must be accorded the alleged contemner. (*City of Culver City* v. *Superior Court,* 38 Cal.2d 535, 541 [241 P.2d 258].) ■ The prime purpose of such proceedings is punishment for disobedience of a valid order directing performance of a specified act. Liability for such drastic punishment 'should not rest upon implication or conjecture' but rather upon an order expressing in 'clear, specific and unequivocal' language the act required. (*Plummer* v. *Superior Court, supra,* p. 164 [20 Cal.2d 158 (124 P.2d 5)].) It was therefore said in the Flynn case that 'greater certainty and clarity may be required to support [contempt] proceedings than are necessary to support other judgment remedies. . . .' (*Flynn* v. *Flynn, supra,* 42 Cal.2d 55, 60 [265 P.2d 865].)" (*Foust* v. *Foust,* 47 Cal.2d 121, 124-125 [302 P.2d 11].)

■ Petitioner was here ordered to show cause why he should not be held in contempt "for wilfully disobeying the Order heretofore made on April 5, 1967." The order of April 5, 1967, was nothing more than an order granting plaintiff's motion for an order and did not order petitioner to perform

any specific act. "Every direction of a court or judge, made or entered in writing, and not included in a judgment, is denominated an order. An application for an order is a motion." (Code Civ. Proc., § 1003.) It is implicit in this section that when a motion for an order is granted the order applied for must be made and entered in the minutes or in a writing signed by the court and filed. It has long been the rule "that to constitute a constructive contempt of the sort here claimed there must have been an 'omission to perform an act which has been *required by the terms of the original order* [quoting from *Dewey* v. *Superior Court,* 81 Cal. 64 [22 P. 333]].' The terms of the order here relied upon do not expressly require the performance of any act." (*Hotaling* v. *Superior Court,* 191 Cal. 501, 508 [217 P. 73, 29 A.L.R. 127].) Here, there is not only a complete omission of all words of a mandatory character from the minute order of April 5 granting plaintiff's motion; there was, in fact, no order at all requiring petitioner to do any act.

The order adjudging petitioner guilty of contempt is void for yet another reason. ■ "It is an essential element of contempt that the conduct of an accused must be willful in the sense that it is inexcusable." (*In re Burns,* 161 Cal.App. 2d 137, 141 [326 P.2d 617].) As said in *Oliver* v. *Superior Court,* 197 Cal.App.2d 237, 239-240 [17 Cal.Rptr. 474], "intent to commit the forbidden act is as essential to guilt as in the case of a criminal offense. ■ There must be substantial evidence that the contemner wilfully and contemptuously refused to obey the order of the court." In such a case a mere preponderance of the evidence is not enough. (*Hotaling* v. *Superior Court, supra,* 191 Cal. at p. 505.)

The order finding petitioner in contempt of court is based in part on the finding that "At all times between May 19 and 22, 1967 defendant had the ability to sign said consent," and that "At all times between said dates defendant wilfully disobeyed said order in that he failed and refused to sign said consent." ■ To quote once more from *Hotaling* (p. 506) : "While the writ of *certiorari* is not a writ of error, it nevertheless extends to the whole of the record of the court below and even to the evidence itself where necssary to determine jurisdiction. (*Schwarz* v. *Superior Court, supra,* [111 Cal. 106 (43 P. 580)] ; *McClatchy* v. *Superior Court, supra* [119 Cal. 413 (51 P. 696, 39 L.R.A. 691)] ; *Great Western Power Co.* v. *Pillsbury,* 170 Cal. 180 [149 P. 35].) In reviewing this proceeding, the charge, the evidence, the find-

318

ings, and the judgment are all to be strictly construed in favor of the accused (*Schwarz* v. *Superior Court, supra*), and no intendments or presumptions can be indulged in aid of their sufficiency. (*Frowley* v. *Superior Court, supra* [158 Cal. 220 (110 P. 817)].) If the record of the proceedings, reviewed in the light of the foregoing rules, fails to show affirmatively upon its face the existence of all the necessary facts upon which jurisdiction depended, the order must be annulled. (*Frowley* v. *Superior Court, In re McCarty* [154 Cal. 534 (98 P. 540)], and other cases above cited.)'' In the case before us we have searched the record in vain for any evidence that petitioner willfully disobeyed a valid order of the court.

The order of April 5, 1967, was made by a commissioner of the respondent court sitting as judge pro tem. That order was served on petitioner's attorney on April 12 and on petitioner personally on May 19. After granting plaintiff's motion, but without making an order requiring petitioner to perform any specific act as noted above, the court ordered that ''In case of defendant's failure or refusal within 10 days after service of notice of this ruling to execute the written consent referred to in item 1 of said motion, the Los Angeles County Clerk is appointed commissioner to execute said consent on defendant's behalf on the ex parte application of plaintiff.'' The most that can be said for the order is that it is ambiguous. In such a case the ambiguity must be resolved in favor of the accused. (*Gottlieb* v. *Superior Court,* 168 Cal.App.2d 309, 313 [335 P.2d 714].)

 It is apparent from the record that petitioner's attorney construed the order as giving petitioner a choice: either sign the consent or let the clerk of the court sign it on his behalf. This is evident from the letter from petitioner's attorney of May 15, in which he advised plaintiff's attorney that ''Mr Little has elected not to sign'' the consent. The same judge who made the order of April 5 so interpreted the order when, on May 23, he granted plaintiff's ex parte application for an order directing the county clerk to sign the consent on behalf of petitioner. And plaintiff's attorney considered the consent signed by the clerk to be a sufficient compliance with the order when he took and completed the deposition of Dolores Hoffman on June 16. On the other hand, it does not appear from the record that, when plaintiff sought to take the deposition of Dr. Shane on July 8, he advised Dr. Shane that the consent had been signed. Instead, he elected to

charge petitioner with contempt, although he did not initiate the proceeding until August 29.

The contempt proceeding was heard by the same judge who made the order of April 5 and the order of May 22 directing the clerk to sign the consent. The transcript of this proceeding simply emphasizes what we have just said. At the outset the court recognized that the order of April 5 did not "within its four corners" state what petitioner was to do, observing that "I must say I didn't draft this really with the idea of laying a foundation for contempt." The court also recognized that, in any event, the order was in the alternative and that plaintiff had availed herself of the alternative by having the clerk sign the consent and proceeding with the deposition of Dolores Hoffman without difficulty by reason thereof. Then, before any evidence was taken in the matter, petitioner's attorney stated that he and his client did not intend to interfere with the process of the court, and that if the court did not intend the order to be in the alternative, the petitioner would sign the consent. Later on petitioner testified that he understood that the order of April 5 was in the alternative, that he elected not to sign the consent, and that it was not his intention in so electing to willfully disobey an order of the court.

As we read the record, we find no evidence to sustain the finding of the court that petitioner willfully disobeyed a valid order of the court.[3]

The order of the respondent court adjudging petitioner in contempt of court is annulled.

Wood, P. J., and Lillie, J., concurred.

---

[3]In making its finding the court seems to have attached some significance to the fact that petitioner did not seek a review by this court of the order of April 5, 1967, which was based on the court's holding that the testimony of Dr. Shane and of Dolores Hoffman was not privileged as claimed by petitioner. In our opinion petitioner's failure to seek a review has no bearing whatever on the question of his alleged willful disobedience of that order.