[Civ. No. 32626. Second Dist., Div. One. Apr. 16, 1968.]

RUTH C. CHAPMAN, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent.

Le Roy L. Center and Steven G. Hamilton for Petitioner.

John D. Maharg, County Counsel, Donald K. Byrne, Assistant County Counsel, and Jean Louise Webster, Deputy County Counsel, for Respondent.

McCOY, J, pro tem.[*]—This is a proceeding to review and annul an order of the respondent court adjuding petitioner guilty of contempt of court for her failure to obey a subpoena duces tecum. We have concluded that the order must be annulled.

On July 21, 1967, an action for damages for personal injuries, entitled Lanar v. King, et al., number SE C 3272-C, was on trial in the respondent court. On that day defendants' attorneys, Messrs. Hecker, Kenealy & McKee, procured the issuance of a subpoena duces tecum directed to and requiring "Custodian of Records of Robert A. Ronne" to produce "All records, including notes, reports, memorandum and all other documents including x-rays in your custody or under your control, relating to all medical or hospital care, treatment, tests and examinations given or concerning Gloria Lanar from January 1, 1950 to the present," at 9:30 a.m. on July 24, 1967, in department 37 of the respondent court. Although it does not so appear from the application for this subpoena, the record shows that Robert A. Ronne was a doctor who apparently had treated plaintiff for the injuries she allegedly sustained in the automobile accident which gave rise to the case on trial. On July 26, 1967, in a proceeding out of the

[*]Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

196

presence of the jury, the judge presiding in department 37 found petitioner, Ruth Chapman, guilty of contempt of court for her willful failure and refusal to comply with the subpoena duces tecum, sentenced her to pay a fine of $50 and then suspended the sentence. Petitioner now claims that in thus finding her in contempt and imposing sentence the court exceeded its jurisdiction and that the order should be annulled. We agree.

 In its recent opinion in *Little* v. *Superior Court,* 260 Cal.App.2d 311 [67 Cal.Rptr. 77], this court quoted from *Hotaling* v. *Superior Court,* 191 Cal. 501, 506 [217 P. 73, 29 A.L.R. 127] : ''While the writ of *certiorari* is not a writ of error, it nevertheless extends to the whole of the record of the court below and even to the evidence itself where necessary to determine jurisdiction. (*Schwarz* v. *Superior Court, supra* [111 Cal. 106 (43 P. 580)] ; *McClatchy* v. *Superior Court, supra* [119 Cal. 413 (51 P. 696, 39 L.R.A. 691)] ; *Great Western Power Co.* v. *Pillsbury,* 170 Cal. 180 [149 P. 35].)

 In reviewing this proceeding, the charge, the evidence, the findings, and the judgment are all to be strictly construed in favor of the accused (*Schwarz* v. *Superior Court, supra*), and no intendments or presumptions can be indulged in aid of their sufficiency. (*Frowley* v. *Superior Court, supra* [158 Cal. 220 (110 P. 817)].) If the record of the proceedings, reviewed in the light of the foregoing rules, fails to show affirmatively upon its face the existence of all the necessary facts upon which jurisdiction depended, the order must be annulled. (*Frowley* v. *Superior Court, In re McCarty,* and other cases above cited.) '' Those rules are equally applicable here.

Although the document itself has not been included in the return to our writ, it appears without dispute from the sheriff's report which is a part of the return that on July 24, 1967, when petitioner failed to appear in response to the subpoena, the court issued an attachment for her arrest. Upon being arrested the next day petitioner was taken before the judge in department 37 who ordered her booked. After she was booked she was released on bail and appeared the following day in department 37 with her attorney to show cause why she should not be adjudged in contempt.

So far as it relates to the contempt proceeding the minute order for July 26 reads: ''Out of presence of the jury, Ruth Chapman appears in Court on bail, represented by counsel, Steven Hamilton, to show cause why she should not be held in

Contempt of Court for failure to appear in Court at 9:30 AM, July 24, 1967, pursuant to subpoena. Ruth C. Chapman is sworn and testifies on her behalf. Marjorie Browne, Clerk, is sworn and testifies. Court's Exhibit 1 (Check for $7) is admitted in evidence. Cause is argued. The Court finds Ruth Chapman had knowledge of the Subpoena commanding appearance in Court 9:30 AM, July 24, 1967, that she had the ability to comply with the order, and that she wilfully failed, neglected and refused to do so. Ruth Chapman is therefore adjudged guilty of Contempt of Court and is sentenced to pay a fine in the sum of $50.00. Sentence is suspended. Bail is exonerated. The Clerk is directed to release the check submitted to the Court as evidence to Hecker, Kenealy & McKee. The check is thereupon handed to James Kenealy.''

■■■ As we read the record, it is obvious that the contempt proceedings were void from the beginning for the reason that the subpoena duces tecum was not directed to the petitioner, Ruth Chapman, and did not require her to appear in department 37 at 9:30 a. m. on January 24, 1967, or at any other time. The subpoena shows on its face that it was directed to ''Custodian of Records of Robert A. Ronne.'' The declaration of service alleges that it was in fact served on ''Ruth Chapman'' on July 21, 1967, without any indication of her capacity. The declaration also alleges that Ruth Chapman demanded a witness fee and was paid $7. The fact is that no fees were demanded by or paid to Ruth Chapman. On the contrary, the process server delivered to her a check for $7 payable to the order of Robert A. Ronne for which he obtained a receipt signed ''Robert A. Ronne . . . by R. Chapman.''

Section 1985 of the Code of Civil Procedure provides that a subpoena ''is a writ or order directed to a person and requiring his attendance at a particular time and place to testify as a witness. It may also require him to bring with him any books, documents, or other things under his control which he is bound by law to produce in evidence. . . . An application before trial for a subpoena duces tecum . . . shall state that the witness has the desired matters or things in his possession or under his control.'' Section 1987 of that code provides that, with certain exceptions not applicable here, ''The service of a subpoena is made by showing the original and delivering a copy, . . . to the witness personally, giving or offering to him at the same time, if demanded by him, the fees to which he is entitled . . .'' ''Disobedience of a subpena duly

served" may be punished as a contempt of court. (Code Civ. Proc., § 1209, subd. 9; § 1991.) Reading these sections together, there can be no doubt that a person who is not "duly served" with a subpoena cannot be punished for contempt of court.

In the case before us, the only person who might be punished for disobedience of the subpoena was the person to whom it was directed, namely, the "Custodian of Records of Robert A. Ronne," and then only if that person was "duly served" with the subpoena. Assuming, without deciding, that a subpoena directed to the "Custodian of Records of Robert A. Ronne," is a sufficient description of the person sought to be subpoenaed as a witness to comply with section 1985, it is apparent from the record before the respondent court which is now before us that the petitioner, Ruth Chapman, was not the custodian of Dr. Ronne's records, and as pointed out above, that she was not served with the subpoena in that capacity, but only as an individual.

At the hearing on July 26, petitioner testified that she was employed by Dr. Ronne only as bookkeeper and receptionist in the front office; that she did not have custody or control of the "medical charts," although as the receptionist she made up "the first chart as the patient comes in." She further testified that Dr. Ronne's former secretary who left in May 1967 was the custodian of the records, that she, the petitioner, had "never been custodian of records at all in his office. He says that he is the custodian of his own records," and that she had never taken any records to court. She also testified that during the four years she had been in Dr. Ronne's office she had never accepted service of a subpoena as custodian of his records.

With respect to the service of the subpoena involved here, petitioner testified that the process server "put the subpoena down on my window," saying that he had "a subpoena for some of Dr. Ronne's records." She then told Dr. Ronne, who was putting a cast on a patient, that his "subpoena on Lanar" was there. "He said, 'Go ahead and accept it,' and he said, 'Get your fee,' and he said, 'Tell the gentleman to wait,' which I did." After telling the process server to wait petitioner attended to other matters, and by the time the doctor got out he was gone. Presumably, before she told process server to wait she had received the subpoena and the check for Dr. Ronne's fees and given the process server the receipt referred to above.

The subpoena was served on July 21, 1967, and called for the production of Dr. Ronne's records in department 37 at 9:30 in the morning of July 24, which was a Monday. Petitioner testified without contradiction, that the records were sent to court by special messenger after Dr. Ronne talked to Mr. Hecker, one of defendants' attorneys, and "Mr. Hecker informed him that the records could be sent in by messenger service." When petitioner was informed that the records were to be sent in by messenger she made the necessary arrangements. "Dr. Ronne had them in the car to bring to court and I went out to the car and got them, put them in an X-ray envelope, sealed them, and addressed it, and sent them out, which he told me to do." She also called the messenger service for that purpose.

Petitioner also testified that it was not her intention to be disrespectful to the court; that she was not used to these proceedings; and that Dr. Ronne "said he was taking his records to court, so I just figured that was it."

At the hearing in the contempt matter the court said that when he was informed on July 24 by Mr. Kenealy that the records of Dr. Ronne had not been produced at 9:30 that morning he instructed his clerk to call Mrs. Chapman and tell her it was her duty to appear in court and produce the records as commanded by the subpoena. The court clerk testified that she had been instructed by the court "to issue a warrant for her arrest or to be brought into court at 3:00 o'clock if she were not here before that time," and that the records arrived in court by messenger at 3:50 that afternoon.

In finding petitioner guilty of contempt the court said "that Mrs. Chapman was served with the subpoena." The court also said that with regard to her failure to appear at the time fixed in the subpoena, the court considered as a matter of "considerable importance" the fact that petitioner demanded and received witness fees.[1] Here, of course, the court completely overlooked the uncontradicted fact that, although the

---

[1] On this point the court said: "That demand for witness fees indicates that Mrs. Chapman is an experienced person. She knows a subpoena. She knows if a witness demands fees that the obligation is to pay the fee; otherwise, why, the subpoena can be disregarded. So she has had experience and it is not a situation where an individual is as naive as the argument would indicate. Now, there was a failure to answer that subpoena and the fact that she received the money indicates to the Court—and that she demanded the money—indicates to the Court that she was the party to be subpoenaed or that she should at least have appeared in court in response to the subpoena and there at 9:30 in the morning give her reason why she could not appear, or bring the records."

subpoena was served on "Ruth Chapman," it was not served on the "Custodian of Records" to whom it was directed. The court also overlooked the fact that Ruth Chapman did not demand that any fees be paid to her, but that she did demand fees on behalf of her employer, and that the fees were paid to her employer.

Finally, the court said, "Now we get to the position here: Is the Court going to be whipsawed between Mrs. Chapman and Dr. Ronne, and is the Court to believe that Mrs. Chapman had nothing to do with this; that she was just the telephone operator there and a receptionist? The Court doesn't believe that."

■ Taking the record by its four corners, it is clear to us that there was no evidence to sustain the implied finding of the court that petitioner had been "duly served" with the subpoena, or the finding that she had the ability to comply with the order and wilfully failed, neglected and refused to do so.[2]

While we commend the court for its desire to vindicate the dignity of its orders, it must be pointed out that it can only do so in the manner provided by law. Here the fault lay in the first instance with Messrs. Hecker, Kenealy & McKee in not requiring its process server to make proper service of the subpoena on the "Custodian of Records" to whom it was directed, and to note the fact that it was actually served on a person not named in the subpoena. More important than that, however, is the fact that before deciding the matter the court did not carefully scrutinize the record before it. Instead the court misstated the facts in the particulars noted above, and chose not to believe the testimony of petitioner as to her status in Dr. Ronne's office.

It is said in 54 Cal.Jur.2d, Witnesses, § 200, pages 657-658, that although "it is the general rule that the uncontradicted testimony of a witness to a particular fact may not be disregarded but should be accepted as proof of the fact, there are exceptions to the rule. If the trier of fact does not act arbitrarily, it may reject the testimony of a witness though uncontradicted . . . if there is any rational ground for doing so." Here, in our opinion, there was no rational ground to disbelieve the testimony of petitioner, particularly in view of the facts disclosed by the record with respect to the actual service of the subpoena which were seemingly overlooked by the court.

[2]What the court found, according to its order, was that "Ruth Chapman had knowledge of the Subpoena commanding appearance in Court 9;30 AM, July 24, 1967,"

The admonition to the trial courts by Justice Shinn, speaking for the court in *In re Burns*, 161 Cal.App.2d 137, at page 144 [326 P.2d 617], seems applicable here. ■ "The power of the court to punish for contempt is indeed broad, but it is not unlimited. It is a drastic remedy, to be employed only when necessary to the proper and orderly conduct of judicial proceedings. A charge of contempt of court must be considered judicially as the question of guilt of any criminal offense must be, and a judge may not punish for contempt merely because he has suffered annoyance through the failure of some order he has made to receive instant observance." Here, as in *Burns,* the conclusion that petitioner willfully disobeyed the subpoena "is contrary to the evidence, direct and circumstantial, and to the presumption that she was not guilty of willful disobedience."

The order finding petitioner in contempt and imposing sentence therefor is annulled.

Wood, P. J., and Lillie, J., concurred.