[Civ. No. 33662. Second Dist., Div. Four. Jan. 23, 1969.]

CARLO SORENSEN et al., Petitioners, v. THE SUPERIOR COURT OF SANTA BARBARA COUNTY, Respondent; DELORES M. VENTURA et al., Real Parties in Interest.

---

Cavalletto, Webster, Mullen & McCaughey, C. Richard Whiston and Ardy V. Barton for Petitioners.

George P. Kading, County Counsel, and Douglas Hart, Deputy County Counsel, for Respondent.

Hollister, Brace & Angle, Robert O. Angle, Goux & Romasanta and J. F. Goux for Real Parties in Interest.

FILES, P. J.—This is an original proceeding brought in this court to review an order of the superior court imposing a fine and imprisonment for an alleged contempt consisting of the alleged violation of a pendente lite injunction.

Petitioners Sorensen, Nipper and Borzelli are three of the

plaintiffs who, on April 22, 1968, commenced an action in the superior court for dissolution of four partnerships. Each of petitioners (hereinafter referred to as plaintiffs) is a partner in' one or more of those organizations, all of which were engaged in real estate development or the operation of multiunit rental property. The complaint alleged that the defendants, who included the other partners, had breached the partnership agreements in various respects, and that certain of the defendants had wrongfully commingled the moneys of the various partnerships, misappropriated funds, and wrongfully disposed of other partnership assets. The prayer was for dissolution, accounting, and the appointment of a receiver pendente lite.

Under date of May 9, 1968, the parties to the main action entered into a written agreement which was designed to make it unnecessary to appoint a receiver. This document, consisting of 20 paragraphs, prohibited certain transfers of money or property, designated the parties who were to manage each of the partnerships, and specified the individuals whose signatures would be required to draw checks against each partnership. The stipulation also included, as paragraph 17, the following language:

 "17. In the event that the cash funds of J. L. V. ENTERPRISES have been or are insufficient to pay when due any actual, existing and bona fide debt or other obligation of that partnership, (including any debt or other obligation which in fact is a partnership obligation but which on its face purports to be the individual obligation of one or more of the partners), each partner shall without delay, contribute to the partnership, in cash, his pro-rata share thereof, in accordance with the written partnership agreement of J. L. V. ENTERPRISES, and if any partner has contributed more than his or her pro-rata share thereof, he or she shall be reimbursed for said excess from said funds."

This stipulation was filed in court. At the end of it was endorsed an order, over the signature of the judge, in the following words:

"The Court having read and considered the foregoing stipulation, and good cause appearing therefor, the Court hereby approves the same, and

"It Is ORDERED that each and every party thereto shall

perform and abide by the terms of said stipulation, during the pendency of this action and until further order of Court.''

On July 19, 1968, the attorneys for some of the defendants in the action (real parties in interest here) obtained an order directing plaintiffs Sorensen, Nipper and Borzelli to show cause why they should not. be adjudged guilty of contempt. This contempt proceeding was initiated upon the declarations of Attorney Robert O. Angle and Defendant Delores M. Ventura. These declarations averred in substance that the court had made the order of May 9, 1968; that the cash funds of J. L. V. Enterprises, one of the partnerships, were insufficient to pay certain of its obligations (which were listed); that demand had been made upon plaintiffs Borzelli and Nipper, each as the owner of a one-sixth interest, to contribute the sum of $14,258.96 as his pro rata share of the cash needed, and that they had refused to do so. The declaration of Mrs. Ventura also averred that, under the order of May 9, 1968, no check could be drawn on the funds of two of the partnerships without the signature of Borzelli and that he had refused to sign four checks which had been prepared by Mrs. Ventura for the purpose of paying bona fide debts of the partnership. Attorney Angle also declared that he was informed and believed and thereon alleged that Edward Borzelli's conduct had been ''with the knowledge and concurrence'' of plaintiffs Nipper and Sorensen.

After a hearing which included several days of testimony the superior court, on September 12, 1968, made an order holding all three in contempt. The order recites that Borzelli and Nipper failed to make the payments required, as listed in the charging declarations, though each had the ability to do so. The court also found ''that Carlo Sorensen conspired with Edward Borzelli to refuse to sign'' the checks prepared by Mrs. Ventura. The court thereupon adjudged that each of the three plaintiffs pay a fine of $250 and be imprisoned in the county jail until he purges himself of the contempt.

Plaintiffs then petitioned this court. We issued a writ calling up the superior court record for review, and stayed the execution of the order pending a decision here.

### The Agreement to Contribute

 Paragraph 17 of the pendente lite stipulation, which Borzelli and Nipper are claimed to have violated, presents a most difficult problem of interpretation. Among other things it provides that the parties shall contribute ''in accordance with

the written partnership agreement of J. L. V. ENTERPRISES.''
Nowhere in the declarations charging contempt is there any
disclosure of the terms of the partnership agreement, nor is
there any reference to it in the findings of the court. We do
not rely upon that formal omission, since the plaintiffs have
not complained of it. The text of the partnership agreement,
which has been supplied in this proceeding, includes the fol-
lowing paragraph:

"11. Upon the consent of a majority in interest of the
partnership a call may be made upon each partner for such
sums as (in the good discretion of the majority in interest)
shall be necessary for the payment of the expenses of the
partnership, when the receipts shall be inadequate for that
purpose. The contributions of the partners shall be in the
same respective proportion as their capital accounts bear each
to the other on the date such call is made. Within 90 days
after written notice of such call each partner shall contribute
his assigned sum. Provided, however, that the amount de-
manded from any individual partner within a period of one
(1) year shall not exceed ten (10%) percent of his initial
contribution to capital.''

There is no averment in the charging declarations or in the
findings of the court that the parties proceeded in accordance
with that paragraph. Obviously the 90-day notice was not
given, and the 10 percent limitation has apparently been dis-
regarded.

Defendants' attorney stated in oral argument before this
court that the words ''in accordance with the written partner-
ship agreement'' meant only ''in the proportions set forth in
the partnership agreement.'' It may be that the parties in-
tended the May 9, 1968, stipulation to supersede some of the
limitations specified in paragraph 11 of the partnership agree-
ment, but the language used is ambiguous. Another interpre-
tation could reasonably be placed upon it.

Paragraph 17 of the May 9 stipulation lacks certainty in
another respect which is even more important. This stipula-
tion, it must be remembered was entered into for the purpose
of maintaining the status quo pending the adjudication of a
suit in which plaintiffs are claiming that the defendants have
commingled and withheld and misappropriated partnership
funds. Those charges have not been adjudicated, nor have
they been withdrawn. The partnership does not need contri-
butions from plaintiffs to pay debts if defendants have part-
nership funds which they refuse to apply for that purpose. It

is not at all clear that in signing the May 9 stipulation plaintiffs were agreeing to accept as true the figures furnished by defendants, and to pay whatever defendants said was needed. Until the controversy between the partners is decided on its merits, plaintiffs may not know what, if any, additional contribution must come from them.

In opposition to the charge of contempt, plaintiffs tried to prove that certain real property should have been sold to raise cash to pay debts. Whether or not that contention had merit, it is illustrative of the controversy which existed at the time of the alleged contempt.

It is important to have in mind that the contempt judgment was to enforce the order of the court, not the stipulation of May 9. In a civil action upon a contract, the court will enforce any duty it can discover through the processes of interpretation, however inartfully or obscurely the terms may have been stated by the parties. (See *Pacific Gas & Elec. Co.* v. *G. W. Thomas Drayage & Rigging Co., Inc.* (1968) 69 Cal.2d 33 [69 Cal.Rptr. 561, 442 P.2d 641].) But before an injunction can be enforced by contempt proceedings, which are quasi-criminal in nature, the duty must be clearly expressed.

██ ''To hold a person guilty of contempt for violating an injunction, the acts constituting the contempt must be clearly and specifically prohibited by the terms of the injunction. [Citations.] The party bound by an injunction must be able to determine from its terms what he may and may not do; he cannot be held guilty of contempt for violating an injunction that is uncertain or ambiguous (Ibid.), just as he may not be held guilty of violating a criminal statute that fails to give him adequate notice of the prohibited acts.'' (*Brunton* v. *Superior Court* (1942) 20 Cal.2d 202, 205 [124 P.2d 831].)

As a corollary to that principle it is sometimes said that any ambiguity in the injunction must be resolved in favor of the accused. (*Little* v. *Superior Court* (1968) 260 Cal.App. 2d 311, 318 [67 Cal.Rptr. 77]; *Butler* v. *Superior Court* (1960) 178 Cal.App.2d 763, 765 [3 Cal.Rptr. 180]; *Gottlieb* v. *Superior Court* (1959) 168 Cal.App.2d 309, 313 [335 P.2d 714].)

██ Under one apparently reasonable interpretation of the order in this case, plaintiffs had no way of knowing what amount of money was necessary to pay the debts of J. L. V. Enterprises until the court determined what cash funds it had and what its obligations were. In the context of this litigation the order made prior to such adjudication was not one which could be enforced by contempt.

*Fretz* v. *Burke* (1967) 247 Cal.App.2d 741 [55 Cal.Rptr. 879], cited by defendants, does not support the contempt order here. In that case the defendant, who was the sole general partner in a limited partnership, notified plaintiffs, who were limited partners, that the sums otherwise distributable to them out of partnership profits would be held in a "suspense account." The superior court granted a preliminary injunction ordering the defendant to pay the limited partners their respective shares of the accrued and future profits. On defendant's appeal from that order, the appellate court affirmed. The opinion points out that the order did not require defendant to pay anything from his own resources, for defendant had already ascertained the plaintiffs' share of accrued profits and had paid that amount into a suspense account. "The [superior] court directed *how* payments are to be made when it has been decided *that* they are disbursable." (Italics in the original.) (247 Cal.App.2d at p. 745.) It is apparent that the injunction in the *Fretz* case, as construed by the appellate court, was not intended to compel the defendant to pay a claim whose amount was in controversy.

### Failure to Sign Checks

The stipulation of May 9, 1968, provided in paragraph 12 that "all disbursements of funds belonging to J. L. V. ENTERPRISES shall be made only by check or other order for the payment of money bearing the signatures of EDWARD BORZELLI and either JACK SCHWARTZ or DOLORES [*sic*] M. VENTURA." There is no promise and there is no order that Borzelli sign any checks. Defendants argue that it is implicit that signatures will not be withheld unreasonably. This may be so. Doubtless a member of a partnership, having responsibility for the disbursement of funds, has a variety of duties in addition to those specified in the stipulation. But the order of the court simply requires Borzelli to "perform and abide by the terms of said stipulation." Punishment for contempt can be had only for violation of that order, not for violation of other duties which are imposed upon him by the partnership agreement or by law. (See *Hotaling* v. *Superior Court* (1923) 191 Cal. 501, 507 [217 P. 73, 29 A.L.R. 127].)

Neither the charging declarations nor the order of the court sets forth any facts constituting a contempt by refusal to sign checks.

In view of the conclusions expressed above it is unnecessary to discuss any of the other grounds urged by plaintiffs for invalidating the contempt order.

The order of September 12, 1968, holding petitioners in contempt is hereby annulled. Petitioners shall recover costs against the real parties in interest who have appeared in this proceeding.

Kingsley, J., and Dunn, J., concurred.

A petition for a rehearing was denied February 13, 1969, and the petition of the respondent and the real parties in interest for a hearing by the Supreme Court was denied March 19, 1969. Mosk, J., was of the opinion that the petition should be granted.